649 F.Supp. 183 (1986)
Bill ROTHFARB, on behalf of himself and all others similarly situated, Plaintiff,
v.
William R. HAMBRECHT, et al., Defendants.
Arthur B. GAUSS, on behalf of himself and all others similarly situated, Plaintiff,
v.
MAGNUSON COMPUTER SYSTEMS, INC., et al., Defendants.
Nos. C-82-1065 WHO, C-82-1091 WHO.
United States District Court, N.D. California.
July 10, 1986.
Supplemental Order August 12, 1986.
*184 William S. Lerach, Milberg Weiss Bershad Spechthrie & Lerach, San Diego, Cal., David B. Gold, San Francisco, Cal., for plaintiff.

ORDER
ORRICK, District Judge.
The Court, having received and reviewed the Report of Special Master ("Report") prepared by Special Master James F. Thacher concerning the joint application for attorneys' fees and costs submitted by plaintiff class counsel, has approved the Report, attached hereto and incorporated herein as Exhibit A, and has tentatively decided to award the following attorneys' fees and costs: for the Gold firm, attorneys' fees of $982,368.77 and costs of $189,095.15; for the Weiss firm, attorneys' fees of $567,988.15 and costs of $278,643.57; and for Lawrence G. Soicher, attorney's fees of $11,015.63.
Pursuant to the Court's Order of January 13, 1986, a hearing will be held on July 29, 1986, at 10:00 a.m., at which class counsel may comment on the Report. Counsel shall file written comments, if any, with the Court on or before July 22, 1986.

EXHIBIT A

REPORT OF SPECIAL MASTER
James F. Thacher, Esq., having been appointed Special Master by order of this Court entered January 13, 1986, to review the Application by Class Counsel for an Award of Attorney's Fees, Costs and Expenses filed November 1, 1985 ("Fee Application"), in accordance with the views set forth by the Court in its Opinion filed January 13, 1986, reports as follows:

PLEADINGS AND DOCUMENTS REVIEWED
In making this Report, the Special Master has reviewed pleadings, documents, deposition transcripts, and other records in the files of Rothfarb v. Hambrecht, No. C-82-1065 WHO ("No. 1065"), Gauss v. Magnuson Computer Systems, Inc., No. C-82-1091 WHO ("No. 1091"), National Union Fire Insurance Company v. Magnuson Computer Systems, Inc., No. C-83-4931 WHO ("Rescission Action"), In re Magnuson Computer Systems, Inc., Bankruptcy Proceeding 583-00867A ("Bankruptcy Proceeding"), Adv. 840214 ("Equitable Subordination Proceeding"), and No. 84-2349, Court of Appeals for the Ninth Circuit ("Bankruptcy Appeal"), relating to the commencement of the class action, the designation of class lead counsel, class certification, defendants' motions to dismiss, defendants' subsequent motion to limit the class period, plaintiffs' motion to certify the pendent state claims, defendant Hambrecht's motion for summary judgment, settlement documents, and Bankruptcy Court, Recission Action, and Circuit Court of Appeals proceedings.
In particular, the Special Master, as directed by the Court, has carefully scrutinized the Fee Application and the Declaration of Paul F. Bennett ("Bennett Declaration") and the Declaration of John E. Grasberger ("Grasberger Declaration") in support of the Fee Application, giving particular attention to the record of time entries included in and forming a part of each declaration.

STANDARD OF REVIEW
In reviewing the Fee Application in order to recommend to the Court reasonable attorneys' fees for services rendered by the applicants of benefit to the plaintiff class, the Special Master has been guided by the views recently expressed by the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424 [103 S.Ct. 1933, 76 L.Ed.2d 40] (1983), Blum v. Stenson, 465 U.S. 886 [104 S.Ct. 1541, 79 L.Ed.2d 891] (1984), and the Ninth Circuit in Moore v. Jas. H. Matthews & Co., *185 682 F.2d 830 (9th Cir.1985 [1982]), and has adhered to the views of this Court expressed in its January 13, 1986, order of appointment, giving particular attention to the application of the guidelines set forth in Moore, approving the procedures followed in In re Capital Underwriters, Inc. Securities Litigation, 519 F.Supp. 92 (N.D.Cal. 1981). Moreover, the views expressed in In re Equity Funding Corp. of America Securities Litigation, 438 F.Supp. 1303 (N.D.Cal.1977), Feuerstein v. Burns, 596 [569] F.Supp. 268 (S.D.Cal.1983), and In re Continental Illinois Securities Litigation, 572 F.Supp. 931 (N.D.Ill.1983), have not been overlooked.
Accordingly, the Special Master has blended the Johnson-Kerr guidelines, Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70, into the lodestar approach as approved in Moore, and In re Capital Underwriters, and followed the instruction of the Supreme Court in Hensley that: "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley, 461 U.S. at 433 [103 S.Ct. at 1939]. It should be noted the Supreme Court goes on to say that "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."[1]Id.

DISCUSSION
These actions were brought on behalf of investors who purchased Magnuson Computer Systems, Inc. ("MCS") common stock during the period from June 25, 1980, through January 29, 1982 ("class period"). The complaints, No. 1065, filed March 16, 1982, and No. 1091, filed three days later on March 18, 1982, both consolidated and amended June 16, 1982, allege violation of the federal and state securities laws in connection with the public offering and sale of 1.1 million shares of common stock for a price of $20 a share or a total of $22,000,000. Four groups of defendants were named: the company, its officers, directors, and control persons, the underwriters, and two accounting firms. Generally speaking, the misrepresentations and omissions alleged in connection with the public offering involved the readiness for market of certain *186 enhanced computers manufactured by the company, the financial condition of the company, and the accounting handling of certain transactions in the registration statement, prospectus, and in addition, financial releases and public statements made from time to time during the class period resulting in "fraud on the market" under Securities Act § 10 and Rule 10(b)-5.
Federal Rules of Civil Procedure 12(b)(6) and 9(b) dismissal motions and motions for class certification of both plaintiff and defendant underwriter classes were filed in July. On August 16, 1982, Fee Applicants were appointed co-lead counsel for plaintiffs (Pretrial Order No. 1). The depositions of plaintiff class representatives, Rothfarb and Gauss, were thereafter taken by defendants. The dismissal and certification motions came on for hearing October 11, 1982, and on December 6, 1982, the Court entered its order, certifying both plaintiff and defendant classes and denying defendants' motions to dismiss.
An extended period of discovery[2] lasting well over two years then ensued, comprising first documentary and then deposition and interrogatory discovery that lasted until almost the eve of trial.[3] Because of the Court's firm direction, discovery proceeded with a minimum of controversy. Fee Application at 23-24; cf. In re Convergent Technologies Securities Litigation, 108 F.R.D. 328, 331-32 (N.D.Cal.1985). During the discovery period plaintiffs' motion for class certification of pendent claims was continued indefinitely, and the Recission Action, discussed below, stayed. On February 13, 1985, defendant Hambrecht, having successfully moved to dismiss plaintiffs' Equitable Subordination Proceeding in the Bankruptcy Court, moved for summary judgment in this Court, and on March 1, 1985, the accountant and underwriter defendants filed motions for partial summary judgments. Plaintiffs filed a response to Hambrecht's motion but not to the accountant and underwriter motions.
Settlement discussions began in earnest on January 9, 1985, when plaintiffs requested a settlement conference. A tentative settlement agreement was reached April 4, 1985, and a settlement stipulation was filed with the Court on June 17, 1985. On August 9, 1985, the Court, over the objection of plaintiffs, ordered preliminary approval of the underwriter defendant class settlement and directed that appropriate notice be sent to members of the underwriter defendant class. On September 13, 1985, the Court entered judgment and dismissed the defendant underwriter class.
On plaintiffs' motion and filing of a proposed class settlement, on September 22, 1985, the Court ordered notice be given of a fairness hearing to be held on December 13, 1985. At the hearing on December 13, 1985, the Court found the payments in the common fund to be fair, reasonable, and adequate, and the case concluded some three-and-a-half years after it began.

RELATED CASES

1. Rescission Action

On April 15, 1983, National Union Fire Insurance Company, Magnuson's D & O carrier, filed a complaint for declaratory judgment and rescission in the Santa Clara County Superior Court against Joseph Hitt, et al. The allegations of the complaint, recited grounds, among others, on which plaintiffs' class actions were based. The action was removed by the defendants to the Bankruptcy Court where MCS had previously initiated a Chapter 11 proceeding, and then by defendant Hambrecht & Quist, which had counterclaimed and requested a jury trial, to the United States District Court, No. C-83-4931 TEH, where it was ordered by this Court related to the class actions, and on July 16, 1984, ordered stayed. In the judgment of the Special Master, this adroit effort by the underwriter defendants bringing the D & O carrier to the settlement table was a substantial *187 contribution to a fair and adequate settlement for the plaintiff class and a material contribution to an expeditious settlement of the litigation.

2. Chapter 11 Proceedings

On March 7, 1983, MCS filed under Chapter 11 in the Bankruptcy Court, San Jose Division, No. 583-00867A. Plaintiffs initiated adversary proceedings to overcome the effect of the automatic stay and insure the continuance of discovery against MCS. In addition, as a class of unliquidated general unsecured creditors, plaintiffs filed a claim in the chapter proceedings for $80,000,000. On April 30, 1984, plaintiffs commenced adversary proceeding No. 840214 in the Bankruptcy Court for equitable subordination of defendant Hambrecht's Class C secured claim. The alleged basis of defendant Hambrecht's inequitable conduct was violation of the securities laws as alleged in the consolidated amended class action complaint, a copy of which was attached to plaintiffs' equitable subordination complaint, and his obtaining, while a director, a secured position in the assets of MCS as a result of transactions involving himself (and others), MCS, and the Bank of America, a principal creditor of MCS at the time.
On December 12, 1984, on the motion of defendant Hambrecht, plaintiffs' complaint was dismissed with prejudice on the ground that approval of the reorganization plan, which had occurred in the meantime, was res judicata on the fairness and equitableness of the distribution made under it. No appeal was taken. As a result, Hambrecht was able to use this dismissal based on res judicata as a basis of his subsequent motion for summary judgment in the class action.
In the judgment of the Special Master, this unsuccessful effort by plaintiffs to subordinate Hambrecht's claim on which considerable time was spent was of little or no benefit to the plaintiff class, and it is recommended that the time devoted to its prosecution be disallowed in substantial part. Cf. Hensley, supra, citing Bartholomew v. Watson, 665 F.2d 910, 914 (9th Cir.1982). See, e.g., Webb v. Board of Education of Dyer County [471 U.S. 234], 105 S.Ct. 1923 [85 L.Ed.2d 233] (1985).

3. Bankruptcy Appeal

The plan of reorganization in the chapter proceeding was approved by the Bankruptcy Court on July 26, 1984. Plaintiffs appealed to the Ninth Circuit on the ground that the plan was not fair and equitable to plaintiffs because the senior secured creditors (Class C) would receive more than 100 percent of their claims. This was premised on plaintiffs' opinion that the securities being received under the plan by the Class C creditors in consideration for release of their lien on the assets of the debtor purchased by Global-USI were undervalued and that their true value was far in excess of the Class C claims. The pending appeal was dismissed as part of the settlement. Again, it is the judgment of the Special Master that the appeal from the reorganization plan was of limited benefit to the plaintiff class and time spent on the effort should be partially disallowed.

FEE REQUESTS
For their services to the plaintiff class during the forty-five months of litigation, Fee Applicants have requested the following fees and expenses for the indicated hours:

*188
 Hours Historical Current Expenses
David B. Gold
APLC 5051 $ 763,348.50 $ 869,935.00 $189,475.15
Milburg
Weiss Bershad
Specthrie &
Lerach 3275.8 463,450.50 555,264.50 278,158.23
Lawrence C.
Soicher 130 24,712.50 29,250.00 485.34
 ______ _____________ _____________ ___________
Total 8456.8 $1,251,511.50 $1,454,449.50 $468,118.72

Time Entries
Fee Applicants' requests are supported by the time entries (Grasberger and Bennett Declarations) that, unfortunately, in many instances are inadequate to sustain the burden on Fee Applicants to show that the time billed was reasonably spent on benefit to the plaintiff class. Hensley, supra. As one example, the David B. Gold entry, "1.00 3/3/82 TC: re Magnuson Computer, review of public documents," tells the reader nothing except that on March 3, 1982, a telephone call was made to someone about Magnuson Computer and printed material available to the public was read.[4] For this service to the class an enhanced fee (at current rates) of $285 × 2.3 or $645.50 (over $10 a minute) is requested. Or again, the multiple entry, "2.00 3/7 Lunch Skornia, review of public documents, worked on complaint," is recorded to support an enhanced fee request at current rates of $1291,[5] or again, "1.0 1/20/83 Analysis of documents; confs; TC's." Doubtless printed matter was read, conferences held, and telephone calls made, but the generality of the commingled activities described is such that it does not form the basis for a rational judgment whether the time spent on the various activities was reasonable, that the activities were beneficial to the class, and that they were performed by an appropriate actor, e.g., senior partner, junior partner, associate, or paralegal. In re Continental Illinois Securities Litigation, supra.
Faced with such generalized entries, the Special Master, realizing that something was done, presumably of some benefit to the class, has recommended that such entries be accepted but only in part. Some entries, however, are recommended to be disallowed entirely, e.g., block entries, covering several days; again not because the work was not done but because it was not properly accounted for, bearing in mind the Fee Applicants' burden of proof. Hensley, supra.
Office conferences, unless clearly identified as relating to an ongoing activity of benefit to the class, are in general recommended to be disallowed or, at most, partially allowed. Unidentified telephone calls are recommended to be disallowed. Time spent reviewing, analyzing, or inspecting unidentified documents is also recommended to be discountednot because time was not spent but because no basis is furnished on which to determine whether such time was reasonably and beneficially spent.

ANALYSIS OF LEGAL ACTIVITIES
The litigation lasted from March 1982 to December 1985, a period of forty-five months.
An overview of Fee Applicants' time records filed with the Court shows that during this period the first three months were spent preparing and filing an adequate *189 comprehensive complaint and securing class lead counsel status. The next four months were primarily devoted to resisting defendants' Rule 12(b) and Rule 9(b)(2) motions to dismiss and to certifying the plaintiff and defendant classes. From December 1982 to March 1985, twenty-eight months were devoted primarily to discovery.
Though plaintiffs initiated settlement discussions in early 1983, settlement efforts aborted and apparently were not pursued again until plaintiffs' request for a settlement conference in early 1985. A settlement in principle was reached in April 1985; thereafter eight months were devoted to its documented conclusion.

1. Time Spent (Fee Applicants' "Lodestars")

LAW FIRM OF DAVID B. GOLD

David B. Gold
According to the Fee Application, David B. Gold spent 537.25 hours on the case, for which he is applying for an historic lodestar of $134,995. Mr. Gold enjoys the reputation of an able, forceful lawyer specializing in complex class action securities litigation. As such, he commands a handsome hourly fee for his services. Because his services are expensive, it is only appropriate they be restricted to those matters where the benefit to the class justifies the cost. Or to put it colloquially, "a man is not sent to do a boy's job!" To insure that this does not happen requires a concrete identification of the service performed for which such a high price is requested. For example, as already noted, a time entry "review of public documents," "analysis of public documents," "analysis of documents," does not identify whether the Wall Street Journal, the prospectus, underwriting agreement, agreement among underwriters, or other identified SEC filings have been read and analyzed. Likewise entries such as "Analysis of docs; depo prep.," "Depo. issues, analysis of testimony, confs.," "Analysis of liability and damage issues," "Confs.," "strategy," give the Special Master no information on which to judge whether the benefit to the class is reasonably proportionate to the cost. Although there is legal authority allowing, one might even say compelling, the disallowance of such generalized descriptions, Fuerstein [Feuerstein], supra, In re Equity Funding Corp., 438 F.Supp. at 1328, the Special Master recognizes that legal activity has taken place that he assumes was of benefit to the class but not at the cost of $270 an hour. Accordingly, in certain instances, he has recommended the reduction of time claimed on the basis of the inadequacy of its support.
Nearly 25 hours were spent on preparing and filing the complaint in No. 1091. Nearly one-third of that time was spent by Mr. Gold, the most senior lawyer in his firm; the balance was spent by Mr. Bennett, the next most senior. No associate time was used. In the Special Master's judgment, this activity is not appropriate for the two senior lawyers of the Gold firm to bill at their senior partner rates. In re Continental Illinois Securities Litigation, 572 F.Supp. at 933. Moreover, the time spent seems excessive for two lawyers of Mr. Gold's and Mr. Bennett's experience in securities class action litigation. Bennett Declaration, Plaintiffs' Memorandum in Support of Motion for Class Certification. For these reasons, it is recommended that one-half the time spent by Mr. Gold working on the complaint be disallowed.
Where the subject matter is reasonably identifiable, time spent in conferences within the firm and with defendants' counsel in Mr. Gold's case is allowable. Mr. Gold's role in the litigation appears to have been to shape the strategy of his firm's efforts, determine the tactics, and parcel out the work assignments. His role outside the office was that of chief negotiator aggressively pressing for an adequate settlement. Both of these activities required conferences.
Time spent on the bankruptcy proceedings has been reduced in part to bring the cost more in line with what the Special Master perceives as having been of benefit *190 to the class. Time relating to unidentified recusal matters has been disallowed.
For these reasons, it is recommended that Mr. Gold's time be reduced by 87.75 hours resulting in a "lodestar" time of 449.50 hours.

Paul F. Bennett
Paul F. Bennett is the second senior lawyer in the Gold firm. According to the Fee Application, he spent 1460.50 hours on the case for which he requests an historic "lodestar" of $254,527. It would appear from his time entries, by and large in sufficient detail to enable the Special Master to grasp what was done, that he was in day-to-day charge of the litigation. From the beginning until the end of the litigation 46 percent of his time was spent on discovery. For the period December 8, 1982, to March 12, 1985, the active discovery period, 61 percent of his time (559 hours) was so spent.
For the reasons discussed above, part of the time attributed to drafting the complaint (and the consolidated, amended complaint) has been disallowed, conferences with colleagues who themselves have not recorded a conference have been disallowed, preparing for and appearing at conferences and at court hearings for which David B. Gold or Melvin I. Weiss prepared and attended have been disallowed as duplicative. In re Continental Illinois Securities Litigation, supra; In re Equity Funding Corp., supra. Time attributed to the bankruptcy proceedings unrelated to MCS discovery matters and to opposing the underwriter class settlement has been reduced so as to bring the cost of such time in line with the perceived benefit to the class.
For these reasons, it is recommended that Mr. Bennett's time be reduced by 164 hours, resulting in a "lodestar" of 1297.50 hours.

Richard A. Rogoff
According to the Fee Application, Richard A. Rogoff spent 2468.50 hours on the case, resulting in an historic lodestar of $320,635.50. Over half of this time was spent during the period June 1984 to May 1985, during which period his historic rate doubled from $75 to $150 per hour. Though he worked on the plaintiff and defendant class certification briefs, and plaintiffs' reply brief among other court papers, the bulk (57 percent) of his time was devoted to discovery matters such as reviewing documents, and preparing for and taking depositions. His time entries are by and large sufficiently detailed, and where they are not the amount entered has been reduced rather than disallowed. Time spent preparing for and attending meetings with Paul F. Bennett, David B. Gold, or John E. Grasberger has been disallowed as, from the class interest, duplicative. Time spent on work that could have been performed by paralegals has been reduced as has time spent on bankruptcy matters other than those relating to class discovery.
Time spent preparing for and attending depositions prepared for and taken by Paul F. Bennett has been disallowed as duplicative. Travel twice to New York to take depositions has been disallowed because there was no showing that New York co-counsel could not have handled the matter. Time spent on settlement conference material also worked on by Paul F. Bennett has been reduced as duplicative.
For these reasons, it is recommended that Mr. Rogoff's time be reduced by 334 hours resulting in a "lodestar" of 2134.50 hours.

George Donaldson
George Donaldson, whose historic billing rate is $130 per hour, performed two tasks in this litigation. He drafted a proposed Pretrial Order No. 1 together with a supporting memorandum, and he reviewed a draft of plaintiffs' reply to defendants' motion to dismiss. For 7.25 hours of such service he requests a lodestar of $942.50. Time spent on review of plaintiffs' reply on which two other laywers in the firm were working is disallowed, and time spent on drafting the proposed order is reduced to *191 bring its cost in line with what it would have been if handled by a junior associate.
For these reasons, it is recommended that Mr. Donaldson's time be reduced by 3.00 hours resulting in 4.25 "lodestar" hours.

John W. Allured
John W. Allured worked on this litigation five hours in May 1982 reviewing the offering prospectus, preparing a discovery subpoena, and reviewing a transcript of hearing re recusal. Three and a half years later, he worked seven days drafting an unsuccessful opposition to the underwriters' motion for class settlement. Because he seems to have immediately left the case, his review of the prospectus and related activities in 1982, other than preparing the subpoena, would appear to be of little benefit to the class. Accordingly, four hours of file, prospectus, and recusal transcript review are recommended to be disallowed and one hour preparing a subpoena allowed. A review of the time entries in July 1985 re opposition to underwriters' motion for preliminary approval of the underwriter class settlement indicates that the 38.75 hours at $165 per hour for a total cost of $6,393.75 is proposed to be charged to the class. Bearing in mind that such cost may be subject to a multiplier, such time measured by benefit, if any, to the plaintiff class appears excessive. Accordingly, it is recommended that it be reduced.
For these reasons, it is recommended that Mr. Allured's time be reduced by 17 hours resulting in 26.75 "lodestar" hours.

Solomon B. Cera
Solomon B. Cera's time entries indicate that in September 1983 he spent 29 hours primarily researching legal questions and drafting interrogatories. (Two telephone calls appear to relate to other matters.) This time is allowed in full. In October 1984, he spent over 78 hours at a proposed cost of $8,190 researching and drafting pleadings in furtherance of plaintiff's unsuccessful attempt to subordinate defendant Hambrecht's secured claims in the bankruptcy proceeding. Because the plaintiff class, unliquidated, unsecured general creditors, ranked below the other claimants in the bankruptcy proceedings and in view of the amount of property available for distribution to creditors under the reorganization plan, the Special Master is of the opinion that this unsuccessful effort was of little benefit to the class and, therefore, recommends that two-thirds of the time spent on this effort by Mr. Cera be disallowed.
For these reasons, it is recommended that Mr. Cera's time be reduced by 53.50 hours resulting in a "lodestar" time of 59 hours.

Timothy Morgan
From September 24, 1982, through November 1, 1982, Timothy Morgan spent 14 hours billed at the rate of $105 an hour entirely on discovery matters. Other than drafting a discovery stipulation, three letters to defendants' counsel, and two office conferences, the entire time was devoted to reviewing discovery files and SEC filings. Reviewing the files and filings appears to have been principally for Mr. Morgan's benefit, and the office conferences to receive instruction on his tasks. Time spent on the discovery stipulation and transmittal letters is recommended to be allowed as of benefit to the class.
For these reasons, it is recommended that Mr. Morgan's time be reduced by 7 hours resulting in 7 "lodestar" hours.

Caroline Morris
Caroline Morris spent 21.50 hours at the billable rate of $95 per hour over seven days in June 1985 reviewing files and drafting an opposition to the debtor's request for an extension of time to file a reorganization plan. For this she requests compensation of $2,042.50. Bearing in mind that such amount may be subject to a multiplier, Ms. Morris' lodestar time has been reduced to bring its cost more in line with what, if any, benefit was conferred on the plaintiff class by opposing the debtor's request *192 for an extension of time to file its reorganization plan. The balance of her time was spent principally on discovery matters.
For these reasons, it is recommended that Ms. Morris' time be reduced by 10 hours resulting in 33.75 "lodestar" hours.

Tim A. Verduin
Tim A. Verduin spent seven days in April for a total of 39.5 hours researching and preparing objections to MCS's proposed plan of reorganization, preparing a complaint for equitable subordination of defendant Hambrecht's claims in the bankruptcy proceeding, and researching bankruptcy appeal procedures. For that, the class is proposed to be billed $3,752.50. In view of the fact that 20 hours were spent researching and preparing the complaint for equitable subordination and another 12 hours on research preparing objections to the reorganization plan, a substantial amount of the billed time appears to be self-educational and on a collateral enterprise of questionable benefit to the plaintiff class. Accordingly, one half the billed research time is recommended to be disallowed. Only one third of the three-fourths hour billed in May for three telephone calls in connection with service of plaintiffs' equitable subordination complaint on defendant Hambrecht is allowed. This activity was more appropriate for a paralegal.
For these reasons, it is recommended that Mr. Verduin's time be reduced by 16.5 hours resulting in 23.75 "lodestar" hours.

Stephen R. Berko
On September 23, 1984, Stephen R. Berko spent 8 hours researching the appropriate standard of review to be employed by an appellate court in reviewing a plan of reorganization. There is no evidence of any communication of the product of such research by any means to anyone nor of its tangible benefit in any other way to the class. It is, therefore, recommended that Mr. Berko's time billed at $85 an hour be disallowed.

Lynn I. Ibarra
Lynn I. Ibarra spent 7.75 hours on February 27-28, 1985, summarizing the deposition of Taylor at a rate of $85 per hour for a total of $658.75. The activity could have been performed by a paralegal, e.g., W.D. Robathan or Gail Cates.
For this reason, Ms. Ibarra's time is recommended to be reduced by 3.5 hours resulting in a "lodestar" of 4.25 hours to bring the cost of such service in line with what it would have been had it been performed by a paralegal.

Mark A. Stump
Mark A. Stump between June 1982 and May 1983 worked 296.5 hours on the case at an historic rate of $75 per hour for an historic lodestar of $22,237.50. Among the tasks performed by him were legal research on identified matters, drafting identified pleadings, and pursuing identified discovery, all of which related directly to the class actions and consequently was of benefit to the class. His time is recommended to be allowed in full.
Accordingly, it is recommended that Mr. Stump's "lodestar" hours of 296.50 be allowed as requested.

MILBERG, WEISS, BERSHAD, SPECTHRIE & LERACH

Melvyn I. Weiss
Melvin I. Weiss is the New York resident senior partner of Milberg, Weiss, Bershad, Specthrie & Lerach, plaintiff Rothfarb's co-counsel and class plaintiffs' co-lead counsel. He requests the highest rate of compensation in the case (current billing $295 per hour). By and large his time was appropriately spent in office and telephone conferences overseeing the activities of his firm's San Diego office and coordinating his firm's activities with those of the Gold firm, the other co-lead counsel.
Putting aside the question of the inevitable redundancy at the supervisorial level implicit in the arrangement of two plaintiffs representing the same class, Mr. *193 Weiss' activities were restricted to those appropriate to his position in his firm and the firm's role in the litigation. Where, however, conferences were held with unidentified parties or unidentified documents reviewed, for reasons already stated, the time attributed to such have been reduced. Time spent on activities prior to preparation of the complaint in No. 1065 is recommended to be disallowed because such time appears to have been spent in connection with client retention and primarily of benefit to the firm and not the class.
For these reasons, Mr. Weiss' time is recommended to be reduced by 10 hours resulting in a "lodestar" of 112.85 hours.

Lawrence Milberg
Lawrence Milberg is a senior New York resident partner in the Weiss firm (current billing $295 per hour). He spent 1.25 hours on the case in May 1984 in "Conference with JEG, Specthrie & DJB" (class cost $343.75). Such time is recommended to be disallowed, there being no indicated benefit to the class nor any information from which class benefit can be reasonably inferred.
It is, therefore, recommended that Mr. Milberg's time billed be disallowed.

David J. Bershad
David J. Bershad is a senior New York resident partner in the Weiss firm (current billing $245 per hour). Reviewing the firm's time entries for his services, it appears that to a large extent such services were devoted to securing the representation of Mr. Rothfarb through Mr. Soicher, and thereafter keeping in touch with the client, particularly in connection with making arrangements for class plaintiff Rothfarb's deposition. To the extent Mr. Bershad engaged in intra-firm conferences and conferences with the Gold firm, his role as a supervisor and coordinator would appear to be duplicative of Mr. Weiss'.
For these reasons, it is recommended that Mr. Bershad's time be reduced by 19.65 hours resulting in 7.25 "lodestar" hours.

Jared Specthrie
Jared Specthrie, a senior member of the Weiss firm (current billing $245 per hour) spent 1.10 in July 1985 conferring in New York with his partners Melvyn I. Weiss and David Bershad on the timing of the settlement agreement.[6] No other time was spent by him on the case in three-and-a-half years. In view of the fact that he had no other association with the case, that substantial time was being spent on the settlement of the case by the Gold firm and the Weiss firm in California where the case was being settled, and that Mr. Weiss was fully capable of, and was, overseeing the Weiss firm's participation in the settlement proceedings, Mr. Specthrie's time is recommended to be disallowed.

William S. Lerach
William S. Lerach, the Weiss firm's senior partner in the San Diego office has submitted a bill for 320.6 hours for $61,793.50 at historic rates and, alternatively, for $78,547 at his current rate of $245 per hour. A review of his time entries, and cross-checking such entries against entries of others, presents the Special Master with a difficult situation. For the period February 25, 1982, to April 28, 1982, there are nineteen entries for a total of 65 hours dealing with such matters as "factual investigation," "continue factual investigation," drafting of complaint," "Complaint  finish drafting" (two identical entries totaling 8.50 hours), "discovery work, telephone re same," "review articles," "telephone calls, etc. re discovery and case management," and the like. None of these items are capable of identification let alone verification *194 by the Special Master. Moreover, on review of the document itself, it is hard to believe, that 23 or so hours were spent, in addition to the time spent by Mr. Finkelstein and Mr. Weiss, in drafting the initial complaint in No. 1091 by a lawyer as accomplished in in class securities litigation law as is Mr. Lerach.[7]
There are twelve block entries of time aggregating 74 hours of which this is typical:
"04/10/83 WSL 8.00 (Time work included 4/10 to 4/16). Confer with JG re settlement stand 2 documents to be copied  bankruptcy strategy."
It is recommended that such block entries of time be disallowed as affording no reasonable basis of verification or on which to determine whether the activities billed for were of any benefit to the class.
The balance of Mr. Lerach's time is devoted primarily to conferences, principally with John E. Grasberger (JEG, JG), David Yardley (DJY, DY), Melvyn I. Weiss (MIW), Paul Bennett (PB), and others. Beginning January 2, 1983, through January 11, 1985, Mr. Lerach records twenty-four entries aggregating 78 hours of conferences with Mr. Grasberger. However, during this same period, Mr. Grasberger showed eight entries for conferences involving Mr. Lerach. For example:
"01/02/83 WSL 5.00 conferences with JEG and DJY re discovery and case management; review pleadings."
(Neither Mr. Grasberger nor Mr. Yardley show an entry for that date.)
"10/31/84 WSL 1.30 Conf. with JEG/MIW re status of case and settlement issues."
(Neither Mr. Weiss nor Mr. Grasberger show an entry for that date.)
"11/20/84 WSL 1.50 Confer with PB; confer with JEG re settlement and trial preparation."
(Neither Mr. Bennett nor Mr. Grasberger show an entry involving Mr. Lerach for that date.)
The list is endless. Over 80 percent of Mr. Lerach's entries involving other conferees do not "wash." So much so that the Special Master's confidence in the accuracy of Mr. Lerach's entries is undermined to a degree that he recommends that only a portion of the time devoted to preparing the initial complaint and a portion of the time devoted to working on the amended consolidated complaint be allowed.[8]
For these reasons, it is recommended that Mr. Lerach's "lodestar" time be reduced to 52.25 hours.

David J. Yardley
David J. Yardley, a former partner in the San Diego office of the Weiss firm worked on the case from March 1982 to March 1983, on such matters as the amended consolidated complaint, class certification motions, and class discovery matters. With the exception of his block time entries (recommended to be disallowed) his time is sufficiently well identified to indicate that the activity reported was beneficial to the class. It is recommended that such non-block entry time be allowed as submitted.
Because of the five block entries aggregating 71 hours, it is recommended that Mr. Yardley's "lodestar" be reduced to 93 hours.

*195 John E. Grasberger

John E. Grasberger, first a resident associate and since 1985 a resident partner of the San Diego office of the Weiss firm, worked on the case for 1814.85 hours between April 1982 and September 1985 for which the firm is billing at historical rates of $272,406.75. From a review of the time entries, it is apparent he pulled the laboring oar for the Weiss firm in the litigation, overseen by his senior partner Melvyn I. Weiss and, in coordination with his counterparts in the Gold firm, Paul F. Bennett and Richard A. Rogoff.
His time entries are in sufficient detail as to enable the Special Master to judge whether or not the time allocated to the described activity was reasonable and beneficial to the class. Nevertheless, on cross-checking Mr. Grasberger's conferences and telephone conferences with other lawyers, the principal internal verification in the record, the Special Master found that one hundred sixty-eight entries were not recorded by the other party. For instance at the beginning of the case:
"02/03/83 JEG .25 TC with Rogoff, Jamie DiBoise."
(There is no corresponding entry by Mr. Rogoff.)
"08/27/85 JEG .30 TC to PFB re plan of allocation."
"08/28/85 JEG .50 TC to PFB re plan of allocation."
"09/07/85 JEG .30 TC with PFB re settlement hearings."
(There are no corresponding entries by Mr. Bennett.)
This is not to say such telephone conversations did not take place, only that it warrants the suspicion that they were not of such benefit to the class as to attract the attention (for billing purposes) of Mr. Bennett, the most active senior lawyer in the case. Accordingly, to the extent time is allocated to such telephone and office conferences, it has been disallowed. The balance of Mr. Grasberger's time, devoted principally to discovery, trial preparation, and settlement matters, is recommended to be allowed.
For these reasons, Mr. Grasberger's time is recommended to be reduced by 49.90 hours resulting in 1,764.95 "lodestar" hours.

Leonard B. Simon
Leonard B. Simon, an associate in the San Diego office of the Weiss firm, worked on the case for 13 hours in May 1983, researching and drafting a memorandum in connection with the Rescission Action for which the firm is proposing to bill $1,430 at Mr. Simon's historic rate of $110 per hour. The services were rendered in connection with an undertaking beneficial to the class at a reasonable cost and is supported by detailed time entries.
For this reason, it is recommended that Mr. Simon's historic "lodestar" of $1,430 be allowed.

Eugene Mikolajczyk
Eugene Mikolajczyk, an associate in the San Diego office of the Weiss firm, worked on the case for 148.25 hours from May 1983 to December 16, 1983, for which the firm is proposing to bill $16,307.50 at Mr. Mikolajczyk's historic hourly rates. His time was primarily devoted to discovery matters such as reviewing reasonably identified documents in San Francisco and San Jose. The time spent and hourly rates ($110 per hour) appear reasonable and of benefit to the class.
For this reason, it is recommended that Mr. Mikolajczyk's historic "lodestar" of $16,307.50 be allowed.

Margaret G. Dobies
Margaret C. Dobies, an associate for the Weiss firm in San Diego, worked two hours on the case in January 1982 reviewing a file. This time is recommended to be disallowed as being of no identifiable benefit to the class.

Anita Meley Laing
Anita Meley Laing, an associate of the Weiss firm in San Diego, worked 106.5 *196 hours on the case from January to August of 1984, for which the firm is proposing to bill $9,072.50 at her historic hourly rate of $85-$95. Her services were primarily devoted to legal research, memoranda, and discovery matters under the supervision of John E. Grasberger. The time entries are specific and the time spent reasonable and of apparent benefit to the class.
For this reason, it is recommended that Ms. Laing's historic "lodestar" of $9,072.50 be allowed.

Steven W. Pepich
Steven W. Pepich, an associate of the Weiss firm in San Diego, spent 35 hours preparing a legal memorandum for John E. Grasberger on accountant's liability for interim financial statements, for which the firm is proposing to bill $2,275 at his historic hourly rate of $65. From Mr. Pepich's time entries, it appears that the time spent was reasonable and the service rendered of benefit to the class.
For this reason, it is recommended that Mr. Pepich's "lodestar" of $2,275 be allowed.

Donald L. Cupit
Donald L. Cupit is a resident associate of the Weiss firm in San Diego. He spent 246 hours between December 1984 and March 1985 on the case, for which the firm proposes to bill $15,990 at his historic hourly rates. Because he was new to the case, 112.10 of his hours were spent reviewing the complaint, prospectus, deposition summaries, etc. in order to bring himself current so that he would be in a position to respond to defendants' interrogatories. Because this review, some of it for 10 to 16 hours a day, was as much for Mr. Cupit's benefit as for the class, one half such time only is recommended to be allowed. Otherwise, Mr. Cupit's time is recommended to be allowed as reasonable in amount and of benefit to the class.
For these reasons, it is recommended that Mr. Cupit's time be reduced by 56 hours resulting in 190 "lodestar" hours for a lodestar fee at historic rates of $12,350.

H. Finkelstein
H. Finkelstein was a resident associate of the Weiss firm in San Diego. From March 1982 to May 1983 he spent 273.5 hours working on the case, primarily reviewing documents and conferring with other lawyers in the firm. The entries for such activities present the Special Master with the same difficulties as did Mr. Lerach's. For example, Mr. Finkelstein records conferences with D.J. Yardley on 09/03/82, 10/04/82, 10/14/82, and 12/15/82. With the exception of 10/03/82 (which could refer to Mr. Finkelstein's 10/04/82 entry), Mr. Yardley's time sheets record no comparable entries. This leaves the impression that the matters discussed were of such little consequence to the class in Mr. Yardley's mind as not to be billable  at least by him. Such entries by Mr. Finkelstein are recommended to be disallowed. Sixteen hours are recorded as spent drafting the complaint in No. 1065. This, together with Mr. Weiss' and Mr. Lerach's hours, on inspection of that document, seems excessive. Again, 19 hours, in addition to the time spent by the Gold office, are recorded as having been spent on the consolidated amended complaint. Again, this seems too much. One third of such time is recommended to be disallowed. Most of the balance of H. Finkelstein's time was spent reviewing documents and meeting and conferring with other lawyers. In view of the number of other lawyers involved, and because he left the case shortly after discovery got under way, the time spent on such review, and in attending a status conference in San Francisco, seems of questionable benefit to the class and is recommended to be disallowed in part. Mr. Lerach's attendance at the same conference with Mr. Bennett would seem more than sufficient.
For these reasons, it is recommended that Mr. Finkelstein's time be reduced by 52 hours resulting in a "lodestar" of 221.50 hours.

Lawrence G. Soicher
Lawrence G. Soicher, a New York attorney admitted to the Bar of the United *197 States Supreme Court and all federal and state courts in New York (but not in California) is billing the class $24,712.50 for 130 hours (including 6 hours preparing his fee application) for services rendered from February 1982 to October 1985. A review of such services modestly and specifically described indicates to the Special Master that they were primarily related to securing the representation of plaintiff Rothfarb and dealing with the Weiss firm about its co-representation of Mr. Rothfarb. For example, as late as June 30, 1982, a revised retainer agreement was being reviewed by Mr. Soicher and the Weiss firm. The Special Master has no doubt about Mr. Soicher's professional qualifications or the quality of his services, but believes that they were primarily for the benefit of his client and not for the benefit of the class, and that where they were purportedly for the benefit of the class, e.g., the conversations with Mr. Grasberger re production of Magnuson documents, they were duplicative of the efforts of others more actively involved in the litigation. However, time spent reviewing the records and documents at Cassedy & Associates and preparing for and taking the deposition of C.E.O. Harris of Cassedy & Associates is recommended to be allowed.
For this reason, it is recommended that Mr. Soicher's "lodestar" time be allowed at 36.75 hours.

2. Difficulty of the Case

The legal complexity naturally attending litigation of this sort is significantly increased when the corporate issuer is in chapter proceedings and has no pocket, so to speak, when (with certain exceptions) the officers and directors have shallow pockets, and when a recalcitrant D & O carrier is seeking to absolve itself from liability along many of the same grounds advanced by plaintiffs as the foundation of their case. To this must be added the difficulty of sustaining the scienter burden against the professional defendants and of establishing an extended class period. Nevertheless, though the task may have been difficult, Fee Applicants, on the basis of their self-professed expertise and hourly rates, could be expected by the class representatives and the Court, to be, and they were, fully up to it.

3. Skill Necessary to Perform Legal Services Required

As represented in their papers in support of their motion for class certification and as recognized by the Court by its appointment of them as co-lead counsel for the class plaintiffs, Fee Applicants are skilled and experienced plaintiffs' securities class action litigation specialists. In view of the skill and experience of defendants' counsel, representation of plaintiffs by equally competent counsel was required.

4. Preclusions of Other Employment

As the fee applicants' own submissions to the Court indicate, plaintiffs' securities class action litigation is their daily bread, and involvement in this case was an augmentation, rather than a preclusion, of desirable legal employment.

5. Customary Fee

Fee Applicants seek fees based on historical or current hourly billing rates ranging for the senior partner in the Gold firm from $200 in 1982 to $285 in 1985 and in the Weiss firm from $250 in 1982 to $295 in 1985. Other partners' and associates' historical and current hourly billing rates are proportionately scaled. To the Special Master's own knowledge, recently confirmed, Fee Applicants' current billing rates are substantially in excess of those billed by securities litigation lawyers of equal stature and skill in San Francisco  at least in the defendant bar. Moreover, they are greatly in excess of those reported in two recent extensively litigated cases in which the respective courts were called upon to fix plaintiffs' attorneys' fees in the Southern District of California (San Diego)[9] and the Southern District of New *198 York.[10] Nevertheless, the Special Master feels constrained by the recent allowance to the Gold firm in this district of $270 an hour for senior partners' time, $185-165 for other partners' time, $145-$140 for senior associates' time, and $95-$75 for junior associates' time. The Special Master recommends the Court follow the Third Circuit Task Force Report and allow New York and San Diego counsel no more than the customary billing rates in the legal community of the forum, i.e., the Northern District of California.

6. Whether the Fee is Fixed or Contingent

This is a contingent fee case and to the Special Master's knowledge class counsel would not have received payment of a fee if there had not been a recovery. This is a common condition of plaintiffs' class action securities litigation. The risk of nonrecovery theoretically is always present to some degree and has been taken into account in recommending the fee enhancement multiplier discussed below.

7. Time Limits Imposed by Client

As best the Special Master can determine from the docket entries, plaintiffs' counsel moved this case towards trial and settlement with dispatch. In this regard their clients were well served.

8. Amount Involved and Results Obtained

Putting aside the hyperbolic $80,000,000 of damages claimed in the Bankruptcy Court and referred to in plaintiffs' papers on file in the Ninth Circuit, it appears that the maximum 10(b)-5 damage claim that plaintiffs would be able to prove (which would exceed the theoretical Section 11 damages) ranged between $23-25 million. The actual settlement of $11,475,000 represents an approximate 48 percent recovery of that amount. In view of the skilled and determined opposition of defense counsel, the recalcitrance of the O & D underwriter,[11] and the causation and scienter problems, this result on the basis of a realistic assessment of potential damages was superior. In theory at least the class recouped in gross approximately 50 percent of a high-risk offering.

9. Experience and Reputation of Attorneys

As has been discussed already and as was represented to the Court in connection with the motion for class certification and is urged upon the Court in the Fee Application, Fee Applicants have substantial experience in plaintiffs' class action securities litigation and enjoy a formidable reputation.

*199 10. Undesirability of Litigation

This litigation, ultimately against liability insurance carriers, to the extent it was against professionals and directors and officers, was not undesirable in the sense that plaintiffs belonged to a disfavored class seeking to vindicate rights against a favored class of defendants. Cf. Hensley, supra. Naturally it was vigorously and resourcefully defended. But as has already been noted, plaintiffs' counsel were equal to the task and, because of the size of the potential recovery, the inducement to undertake it was significant.

11. Nature and Length of Professional Relationship with Client

Other than this case, counsel would appear to have had no relationship with class plaintiffs nor the expectancy of any future relationship.

12. Awards in Similar Cases

This is discussed in connection with multipliers.

13. Multiplier

In determining the amount of a fee enhancement multiplier, if any, to be recommended to the Court, the Special Master has paid particular attention to the admonitions of the Supreme Court in Blum, supra, that factors considered in setting a reasonable rate and the number of hours expended should not be used again to enhance the fee award, that neither the complexity nor novelty of the issues is an appropriate factor in determining whether to increase the basic fee award and that an upward adjustment is justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service was superior to that one reasonably should expect in light of the hourly rates charged and that the success was `exceptional'." Blum v. Stenson, 465 U.S. 886, 899 [104 S.Ct. 1541, 1549, 79 L.Ed.2d 891] (1984). Moreover, even though there must be sufficient reward for competent counsel to undertake this class of litigation, there also must be recognition that an element of public service is involved and that the opportunity to represent the class plaintiffs is judicially determined. In re Equity Funding Corp., supra, 438 F.Supp. at 1377.
As has been indicated, the quality of the class representation in this case was superior but, in the judgment of the Special Master, it was no more than the class and the Court had every reason to expect in view of the representations made to the Court in connection with securing the appointment of co-lead counsel for the class, the reputation and experience of counsel in this type of litigation, and their proposed customary hourly rates, which in the case of the senior partners currently approach $300 an hour ($5 a minute).
In light of the foregoing considerations, the unremarkable course of the litigation, Fuerstein [Feuerstein], 569 F.Supp. at 268, and recognizing that moderation should be exercised in allowing court-awarded attorneys' fees and expenses, In re Capital Underwriters, 519 F.Supp. at 98, the results achieved in this litigation, in the judgment of the Special Master, were not "exceptional," as that term is used in Blum, and, therefore, no fee enhancement on the basis of "quality" is recommended.[12]
This, however, does not end fee enhancement consideration. The Ninth Circuit has joined the majority of circuits holding that the contingent nature of the litigation may be considered in an enhancement of the lodestar fee. See LaDuke v. Nelson, *200 762 F.2d 1318 (9th Cir.1985); Wildman v. Lerner Stores Corp., 771 F.2d 605 (9th [1st] Cir.1985); Delaware Valley Citizens' Council v. Pennsylvania, 762 F.2d 272 (3d Cir.), cert. denied [___ U.S. ___], 106 S.Ct. 57 [88 L.Ed.2d 46] (1985); Sierra Club v. Clark, 755 F.2d 608 (8th Cir.1985); Jones v. Central Soya Co., 748 F.2d 586 (11th Cir.1984); Contra McKinnon v. City of Berwyn, 750 F.2d 1383 (7th Cir.1985); Laffey v. Northwest Airlines, Inc., 746 F.2d 4 (D.C.Cir.1984), cert. denied, [472 U.S. 1021], 105 S.Ct. 3488 [87 L.Ed.2d 622] (1985). Because of the results achieved, the allowance of fee enhancement in other recent similar cases in the District, e.g., McFarland v. Memorex, 96 F.R.D. 357 (N.D.Cal.1982), and more particularly, because in any contingency case there is always the possibility that there will be no recovery,[13] a "risk" fee enhancement in the judgment of the Special Master is appropriate. In recommending to the Court a multiplier augmentation to the "lodestar" fee on the basis of risk of nonpayment because of no recovery, the Special Master has taken two additional but opposing factors into account: first, the necessary delay, even though relatively short,[14] in payment until the end of the case, Harmsen, supra; second, the substantial uncertainty as to the accuracy of Fee Applicants' time records fostered by the manifest inadequacy of certain of the verifiable portions of such records. This uncertainty is increased because of the burden on plaintiffs to produce accurate and verifiable records of reasonable time spent for the benefit of the class. Hensley, supra; Blum, supra; In re Capital Underwriters, Inc. Securities Litigation, supra, 519 F.Supp. at 102. For these reasons, the Special Master recommends a 150 percent fee enhancement or a multiplier of 1.5. This is in line with that recently allowed in Memorex (1.5), and significantly more than the 1.06 multiplier allowed in Feuerstein.

 14. Expenses
 Category: Total Weiss Gold 
 Telephone $ 8,236.97 $ 5,099.76 $ 3,137.21
 Postage/Messenger 10,913.32 5,022.25 5,891.07
 Special Secretarial
 & Clerical 12,499.34 9,180.90 3,318.44
 Travel Expenses[15] 58,315.47 53,321.03 5,994.44
 Reproduction 65,497.81 22,120.03 43,377.78
 Filing Fees &
 Legal Costs 3,750.20 1,728.40 2,021.80
 Consultants:[16]
 Accounting Fees 111,642.54 99,141.54 12,501.00
 Computer Techs 35,730.00 ____ 35,730.00

*201
 Category: Total Weiss Gold 
 Paraprofessionals
 (Paralegals &
 Financial
 Analysts)[17] 128,930.00 66,972.50 61,957.50
 Transcripts 36,257.32 16,870.25 19,387.07
 Miscellaneous 186.91 186.91 ___
 Recovered Costs (4,221.16) ___ (4,221.16)
 ___________ ___________ ___________
 TOTAL $467,738.72 $278,643.57 $189,095.15

*202 TOTAL FEES AND EXPENSES
Based on the foregoing, the Special Master recommends to the Court that the following fees and expenses be allowed:

 GOLD FIRM
 Hours Historical Historical
 Attorneys Allowed Rate Lodestar 
 David B. Gold
 6/81-5/82 10.25 $200 $ 2,050.00
 6/82-5/83 131.75 225 29,643.74
 6/83-5/84 113.75 250 28,437.50
 6/84-5/85 152.00 270 41,040.00
 6/85-9/85 41.75 285 11,898.75
 _______ ___________
 Totals: 449.50 $113,070.00
 Paul F. Bennett
 6/81-5/82 49.25 $125 $ 6,156.25
 6/82-5/83 273.50 140 38,290.00
 6/83-12/83 82.25 160 13,160.00
 1/84-5/84 49.75 185 9,203.75
 6/84-5/85 656.50 185 121,452.50
 6/85-9/85 186.25 200 37,250.00
 ________ ___________
 Totals: 1,297.50 $225,512.50
 Richard A. Rogoff
 6/81-5/82 50.00 $ 75 $ 3,750.00
 6/82-5/83 360.25 105 37,826.25
 6/83-5/84 492.25 125 61,531.25
 6/84-5/85 1,222.00 140 171,080.00
 6/85-9/85 10.00 150 1,500.00
 _________ ___________
 Totals: 2,134.50 $275,687.50
 George Donaldson
 6/82-5/83 4.25 $130 $ 552.50
 _________ ___________
 Totals: 4.25 $ 552.50
 John Allured
 6/81-5/82 1.00 $100 $ 100.00
 6/85-9/85 25.75 165 4,248.75
 _________ ___________
 Totals: 26.75 $ 4,348.75
 Mark A. Stumpf
 6/82-5/83 296.50 $ 75 $ 22,237.50
 _________ ___________
 Totals: 296.50 $ 22,237.50
 Tim A. Verduin
 6/83-5/84 23.75 $ 95 $ 2,256.25
 _________ ___________
 Totals: 23.75 $ 2,256.25
 Solomon B. Cera
 6/83-5/84 29.50 $ 95 $ 2,802.50
 6/84-5/85 29.50 105 3,097.50
 _________ ___________
 Totals: 59.00 $ 5,900.00
 Lynn I. Ibarra
 6/84-5/85 4.25 $ 85 $ 361.25
 _________ ___________
 Totals: 4.25 361.25

*203
 GOLD FIRM
 Hours Historical Historical
 Attorneys Allowed Rate Lodestar 
 Steven R. Berko
 6/84-5/85 0 $ 85 $ 0.00
 ______________ ___________
 Totals: 0 $ 0.00
 Timothy Morgan
 6/82-5/83 7.00 $105 $ 735.00
 _________ ___________
 Totals: 7.00 $ 735.00
 Caroline Morris
 6/83-5/84 44.75 $ 95 $ 4,251.25
 _________ ___________
 Totals: 44.75 $ 4,251.25
 GRAND TOTALS 4,347.75 $654,912.50
 Gold Firm Multiplier 1.50 
 Historical Lodestar
 Attorneys (with multiplier) 
 David B. Gold $169,605.00
 Paul F. Bennett 338,268.75
 Richard A. Rogoff 413,531.25
 George Donaldson 828.75
 John Allured 6,523.13
 Mark A. Stumpf 33,356.25
 Tim A. Verduin 3,384.38
 Solomon B. Cera 8,850.00
 Lynn I. Ibarra 541.88
 Steven R. Berko 0.00
 Timothy Morgan 1,102.50
 Caroline Morris 6,376.88
 _____________________
 Grand Total $982,368.77
 WEISS FIRM
 Hours Historical Historical
 Attorneys Allowed Rate Lodestar 
 Melvin I. Weiss
 1982 21.25 $250 $ 5,312.50
 1983 40.25 250 10,062.50
 1/84-6/84 24.75 275 6,806.25
 7/84-12/84 6.80 285 1,938.00
 1/85-6/85 19.30 295 5,693.50
 _________ ___________
 Totals: 112.35 $ 29,812.75
 Lawrence Milberg 0 $275 0.00
 _________ ___________
 Totals: 0 $ 0.00
 David J. Bershad
 1982 4.50 $185 $ 832.50
 1983 0 195 0.00
 1/84-6/84 2.00 225 450.00
 7/84-12/84 .25 235 58.75
 1/85-6/85 .50 245 122.50
 7/85-Current 0 245 0.00
 _________ ___________
 Totals: 7.25 $ 1,463.75

*204
 GOLD FIRM
 Hours Historical Historical
 Attorneys Allowed Rate Lodestar 
 Jared Spechtrie
 1985 0 $245 $ 0.00
 _________ ___________
 Totals: 0 $ 0.00
 William S. Lerach
 1982 43.75 $185 $ 8,093.75
 1983 8.50 190 1,615.00
 1/84-6/84 0 225 0.00
 7/84-12/84 0 235 0.00
 1/85-6/85 0 245 0.00
 _________ ___________
 Totals: 52.25 $ 9,708.75
 David J. Yardley
 1982 84.25 $135 $ 11,373.75
 1983 8.75 140 1,225.00
 _________ ___________
 Totals: 93.00 $ 12,598.75
 John E. Grasberger
 1982 12.25 $105 $ 1,286.25
 1983 407.00 110 44,770.00
 1/84-6/84 190.25 140 26,635.00
 7/84-12/84 634.40 155 98,332.00
 1/85-6/85 467.15 180 84,087.00
 7/85-Current 53.90 180 9,702.00
 _________ ___________
 Totals: 1,764.95 $264,812.25
 Leonard B. Simon
 1983 13.00 $110 $ 1,430.00
 _________ ___________
 Totals: 13.00 $ 1,430.00
 Eugene Mikolajczyk
 1983 148.25 $110 $ 16,307.50
 _________ ___________
 Totals: 148.25 $ 16,307.50
 Margaret G. Dobies
 1982 0 $ 70 $ 0.00
 _________ ___________
 Totals: 0 $ 0.00
 Anita Meley Laing
 1/84-6/84 104.50 $ 85 $ 8,882.50
 7/84-12/84 2.00 95 190.00
 _________ ___________
 Totals: 106.50 $ 9,072.50
 Steven W. Pepich
 1/85-6/85 35.00 $ 65 $ 2,275.00
 _________ ___________
 Totals: 35.00 $ 2,275.00
 Donald L. Cupit
 7/84-12/84 51.50 $ 65 $ 3,347.50
 1/85-6/85 138.50 65 9,002.50
 _________ ___________
 Totals: 190.00 $ 12,350.00
 H. Finkelstein
 1982 189.50 $ 85 $ 16,107.50
 1983 32.00 85 2,720.00
 _________ ___________
 Totals: 221.50 $ 18,827.50
 GRAND TOTALS 2,744.20 $378,658.75

*205
 Weiss Firm Multiplier 1.5 
 Historical Lodestar
 Attorneys (with multiplier) 
 Melvin I. Weiss $44,719.13
 Lawrence Milberg 0.00
 David J. Bershad 2,195.63
 Jared Specthrie 0.00
 William S. Lerach 14,563.13
 David J. Yardley 18,898.13
 John E. Grasberger 397,218.38
 Leonard B. Simon 2,145.00
 Eugene Mikolajczyk 24,461.25
 Margaret G. Dobies 0.00
 Anita Meley Laing 13,608.75
 Steven W. Pepich 3,412.50
 Donald L. Cupit 18,525.00
 H. Finkelstein 28,241.25
 _____________________
 Grand Total $567,988.15
 LAWRENCE G. SOICHER
 Hours Historical Historical
 Attorney Allowed Rate Lodestar 
 Lawrence G. Soicher
 1982 0 $150 $ 0.00
 1983 .75 175 131.25
 1984 35.00 200 7,100.00
 1985 .50 225 112.50
 _______________ ___________
 Totals: 36.75 $ 7,343.75
 Soicher Multiplier 1.50 
 Historical Lodestar
 Attorney (with multiplier) 
 Lawrence G. Soicher $11,015.63
 Dated: June 18, 1986.
 Respectfully submitted,
 /s/ James F. Thacher
 James F. Thacher
 Special Master

APPENDIX

 A. Special Master Report 1/3/82-1/13/86
 1. Percentage of Total Litigation by Attorney
 2. Percentage of Total Litigation by Category
 3. Percentage of Category within Attorney
 a) Weiss Firm
 b) Gold Firm
 4. Percentage of Attorney within Category
 B. Time Frame 1/3/82-12/7/82
 1. Percentage of Total Litigation by Attorney
 2. Percentage of Total Litigation by Category
 3. Percentage of Category within Attorney
 a) Weiss Firm
 b) Gold Firm
 4. Percentage of Attorney within Category

*206
 C. Time Frame 12/8/82-3/12/85
 1. Percentage of Total Litigation by Attorney
 2. Percentage of Total Litigation by Category
 3. Percentage of Category within Attorney
 a) Weiss Firm
 b) Gold Firm
 4. Percentage of Attorney within Category
 D. Time Frame 3/13/85-1/13/86
 1. Percentage of Total Litigation by Attorney
 2. Percentage of Total Litigation by Category
 3. Percentage of Category within Attorney
 a) Weiss Firm
 b) Gold Firm
 4. Percentage of Attorney within Category
 SPECIAL MASTER REPORT  PERCENTAGE OF TOTAL
 LITIGATION BY ATTORNEY
 HOURS VALUE 
 Atty %File %Atty Atty %File %Atty
 Attorney Hours Totals Ttls Value Ttls Ttls
 Richard A. Rogoff 2468.50 22% 29% $320,635.50 23% 26%
 John E. Grasberger 1814.85 16% 21% $272,406.75 20% 22%
 Paul F. Bennett 1460.50 13% 17% $254,290.50 18% 20%
 Weiss Paralegals 1384.35 12% $ 66,972.50 5%
 Gold Paralegals 1370.75 12% $ 60,723.75 4%
 David B. Gold 537.25 5% 6% $134,995.00 10% 11%
 W. S. Lerach 320.60 3% 4% $ 61,793.50 4% 5%
 Mark A. Stump 296.50 3% 4% $ 22,237.50 2% 2%
 H. Finkelstein 273.50 3% 3% $ 23,247.50 2% 2%
 D. L. Cupit 246.00 2% 3% $ 15,990.00 1% 1%
 Y. Yardley 164.00 1% 2% $ 22,183.75 2% 2%
 E. Mikolajczyk 148.25 1% 2% $ 16,307.50 1% 1%
 Lawrence B. Soicher 130.00 1% 2% $ 24,712.50 2% 2%
 Melvin I. Weiss 122.85 1% 1% $ 32,517.75 2% 2%
 Solomon B. Cera 112.50 1% 1% $ 11,520.00 1% 1%
 A. M. Laing 106.50 1% 1% $ 9,072.50 1% 1%
 Carolyn Morris 54.75 1% 1% $ 5,201.25 1% 1%
 John Allured 43.75 1% 1% $ 6,893.75 1% 1%
 Tim A. Verduin 40.25 1% 1% $ 3,823.75
 S. W. Pepich 35.00 1% $ 2275.00
 D. J. Bershad 26.90 $ 5473.00
 Timothy Morgan 14.00 $ 1470.00
 L. B. Simon 13.00 $ 1430.00
 Gold F/A 10.00 $ 1050.00
 George Donaldson 7.25 $ 942.50
 Stephen R. Berko 8.00 $ 680.00
 Lynn I. Barra 7.75 $ 658.75

*207
 HOURS VALUE 
 Atty %File %Atty Atty %File %Atty
 Attorney Hours Totals Ttls Value Ttls Ttls
 M. G. Dobies 2.00 $140.00
 L. Milburg 1.25 $343.75
 J. Spechtrie 1.10 $269.50
 Gold F/A 1.75 $183.75
 _________ ____ ____ _________ ____ ____
 Total File Hours: 11,223.65 100% 100% 100% 100%
 Total Attorney Hours in File: 8,456.8
 Total File Value: $1,380,441.50
 Total Attorney Value: $1,251,511.50
 PERCENTAGE OF TOTAL LITIGATION BY CATEGORY
 HOURS VALUE 
 Category % Category % Atty
 Hours Hours Value Value
 Discovery 4644.25 55% $ 656,748.00 52%
 Bankruptcy Proceedings 964.95 11% $ 132,681.50 11%
 Settlement 943.40 11% $ 193,710.75 16%
 Class Certification 470.00 5% $ 56,000.00 4%
 Trial Preparation 337.50 4% $ 57,101.25 5%
 Case Analysis 310.00 4% $ 48,157.50 4%
 Case Administration 223.20 3% $ 30,403.25 2%
 Pleadings 158.75 2% $ 21,290.00 1%
 Motion to Dismiss 112.75 1% $ 17,247.50 1%
 Pendant Claims 111.00 1% $ 11,038.75 1%
 Summary Judgment Motion 86.50 1% $ 12,902.50 1%
 Rescission 69.75 1% $ 10,132.50 1%
 Client Representation 19.75 1% $ 3,290.00 1%
 Class Communication 4.50 $ 760.00
 Recusal .50 $ 50.00
 ________ ____ _____________ ____
 TOTALS: 8,456.80 100% $1,251,511.50 100%
 PERCENTAGE OF CATEGORY WITHIN ATTORNEY
 Attorney Total % $ %
 Melvin I. Weiss Hours Hours Value Value
 Category
 Settlement 70.60 57% $ 19,402.75 60%
 Case Analysis 18.00 15% $ 4,537.50 14%
 Discovery 14.00 11% $ 3,515.00 11%
 Case Administration 10.50 9% $ 2,625.00 8%
 Pleadings 4.75 4% $ 1,187.50 3%
 Bankruptcy Proceedings 2.75 2% $ 687.50 2%
 Client Representation 2.25 2% $ 562.50 2%
 ======== ===== =========== =====
 TOTALS: 122.85 100% $ 32,517.75 100%

*208
 Attorney
 D.J. Bershad Total % $ %
 Category Hours Hours Value Value
 Pleadings 6.50 24% $ 1,202.50 22%
 Discovery 3.95 15% $ 910.75 17%
 Settlement 3.90 15% $ 955.50 17%
 Case Analysis 3.50 13% $ 670.00 12%
 Case Administration 3.30 12% $ 670.50 12%
 Class Certification 3.25 12% $ 601.25 11%
 Client Representation 2.50 9% $ 462.50 9%
 ======== ===== =========== =====
 TOTALS: 26.90 100% $ 5,473.00 100%
 Attorney
 J. Spechtrie
 Category
 Settlement 1.10 100% $ 269.50 100%
 ======== ===== =========== =====
 TOTALS: 1.10 100% $ 269.50 100%
 Attorney
 W.S. Lerach
 Category
 Discovery 131.55 41% $ 26,086.75 42%
 Case Analysis 54.50 17% $ 10,170.00 16%
 Motion to Dismiss 45.50 14% $ 8,417.50 14%
 Case Administration 30.00 9% $ 5,555.00 9%
 Settlement 24.55 8% $ 5,101.75 8%
 Bankruptcy Proceedings 16.00 5% $ 3,040.00 5%
 Pleadings 13.50 4% $ 2,497.50 4%
 Class Certification 5.00 2% $ 925.00 2%
 ======== ===== =========== =====
 TOTALS: 320.60 100% $ 61,793.50 100%
 Attorney
 L. Milberg
 Category
 Discovery 1.25 100% $ 343.75 100%
 ======== ===== =========== =====
 TOTALS: 1.25 100% $ 343.75 100%
 Attorney
 Y. Yardley
 Category
 Discovery 99.00 60% $ 13,408.75 60%
 Motion to Dismiss 39.00 24% $ 5,265.00 24%
 Pleadings 19.00 12% $ 2,565.00 12%
 Class Certification 4.00 2% $ 540.00 2%

*209
 Attorney
 Y. Yardley Total % $ %
 Category Hours Hours Value Value
 Case Administration 3.00 2% $ 405.00 2%
 ======== ===== =========== =====
 TOTALS: 164.00 100% $ 22,183.75 100%
 Attorney
 John E. Grasberger
 Category
 Discovery 1,485.00 82% $218,895.00 80%
 Settlement 155.50 8% $ 26,710.00 10%
 Trial Preparation 80.00 4% $ 14,375.00 5%
 Bankruptcy Proceedings 47.20 3% $ 6,333.50 2%
 Case Administration 25.65 1% $ 3,625.75 1%
 Case Analysis 11.25 1% $ 1,340.00 1%
 Pendant Claims 6.00 1% $ 660.00 1%
 Pleadings 3.75 $ 412.50
 Rescission .50 $ 55.00
 ======== ===== =========== =====
 TOTALS: 1,814.85 100% $272,406.75 100%
 Attorney
 L.B. Simon
 Category
 Rescission 13.00 100% $ 1,430.00 100%
 ======== ===== =========== =====
 TOTALS: 13.00 100% $ 1,430.00 100%
 Attorney
 E. Mikolajcyzk
 Category
 Discovery 136.00 92% $ 14,960.00 92%
 Bankruptcy Proceedings 12.25 8% $ 1,347.50 8%
 ======== ===== =========== =====
 TOTALS: 148.25 100% $ 16,307.50 100%
 Attorney
 M. G. Dobies
 Category
 Case Analysis 2.00 100% $ 140.00 100%
 ======== ===== =========== =====
 TOTALS: 2.00 100% $ 140.00 100%
 Attorney
 A.M. Laing
 Category
 Discovery 58.00 54% $ 4,950.00 55%
 Bankruptcy Proceedings 48.50 46% $ 4,122.50 45%
 ======== ===== =========== =====
 TOTALS: 106.50 100% $ 9,072.50 100%

*210
 Attorney
 S.W. Pepich Total % $ %
 Category Hours Hours Value Value
 Case Analysis 35.00 100% $ 2,275.00 100%
 ======== ===== =========== =====
 TOTALS: 35.00 100% $ 2,275.00 100%
 Attorney
 D.L. Cupit
 Category
 Discovery 195.00 79% $ 12,675.00 80%
 Trial Preparation 27.00 11% $ 1,755.00 10%
 Case Analysis 24.00 10% $ 1,560.00 10%
 ======== ===== =========== =====
 TOTALS: 246.00 100% $ 15,990.00 100%
 Attorney
 H.D. Finkelstein
 Category
 Discovery 149.00 54% $ 12,665.00 54%
 Case Administration 50.50 18% $ 4,292.50 18%
 Pleadings 43.00 16% $ 3,655.00 16%
 Case Analysis 18.50 7% $ 1,572.50 7%
 Class Certification 12.50 5% $ 1,062.50 5%
 ======== ===== =========== =====
 TOTALS: 273.50 100% $ 23,249.50 100%
 Attorney
 Lawrence B. Soicher
 Category
 Discovery 77.75 60% $ 15,318.75 62%
 Settlement 14.25 11% $ 3,118.75 13%
 Case Administration 12.50 10% $ 2,350.00 9%
 Client Representation 10.50 8% $ 1,575.00 6%
 Case Analysis 7.50 6% $ 1,125.00 5%
 Pleadings 5.00 4% $ 750.00 3%
 Trial Preparation 2.00 1% $ 400.00 2%
 Bankruptcy Proceedings .50 $ 75.00
 ======== ===== =========== =====
 TOTALS: 130.00 100% $ 24,712.50 100%
 Attorney
 David B. Gold
 Category
 Settlement 202.50 38% $ 53,248.75 39%
 Discovery 78.50 15% $ 19,778.75 15%
 Class Certification 76.50 14% $ 17,312.50 13%
 Case Analysis 65.75 12% $ 15,736.25 12%
 Bankruptcy Proceedings 55.00 10% $ 14,145.00 10%

*211
Attorney
David B. Gold Total % $ %
Category Hours Hours Value Value
Trial Preparation 38.75 7% $ 10,462.50 8%
Pleadings 11.25 2% $ 2,250.00 1%
Case Administration 4.50 1% $ 986.25 1%
Rescission 3.50 1% $ 875.00 1%
Client Representation 1.00 $ 200.00
 ======== ==== =========== ====
TOTALS: 537.25 100% $134,995.00 100%
Attorney
Paul F. Bennett
Category
Discovery 678.00 46% $117,336.75 46%
Settlement 335.25 23% $ 65,032.50 26%
Bankruptcy Proceedings 117.25 8% $ 20,647.50 8%
Trial Preparation 82.75 6% $ 15,308.75 6%
Pleadings 52.00 4% $ 6,770.00 3%
Case Administration 44.75 3% $ 5,867.50 3%
Class Certification 41.50 3% $ 5,810.00 2%
Case Analysis 29.25 2% $ 4,672.50 2%
Rescission 29.25 2% $ 4,835.00 2%
Pendant Claims 20.75 2% $ 2,905.00 1%
Summary Judgment Motion 18.00 1% $ 3,330.00 1%
Motion to Dismiss 7.25 $ 1,015.00
Class Communication 4.50 $ 760.00
 ======== ==== =========== ====
TOTALS: 1,460.50 100% $254,290.50 100%
Attorney
Richard A. Rogoff
Category
Discovery 1418.00 57% $185,382.50 58%
Bankruptcy Proceedings 497.50 20% $ 65,995.50 21%
Class Certification 173.50 7% $ 18,217.50 5%
Trial Preparation 101.00 4% $ 14,140.00 4%
Settlement 97.00 4% $ 13,477.50 4%
Summary Judgment Motion 68.00 3% $ 9,520.00 3%
Case Administration 27.00 1% $ 2,912.50 1%
Rescission 23.50 1% $ 2,937.50 1%
Case Analysis 22.00 1% $ 2,575.00 1%
Pendant Claims 21.00 1% $ 2,940.00 1%
Motion to Dismiss 16.50 1% $ 2,047.50 1%
Client Representation 3.50 $ 490.00
 ======== ==== =========== ====
TOTALS: 2,468.50 100% $320,635.50 100%
Attorney
George Donaldson
Category
Case Administration 4.25 59% $ 552.50 59%

*212
Attorney
George Donaldson Total % $ %
Category Hours Hours Value Value
Motion to Dismiss 3.00 41% $ 390.00 41%
 ======== ==== =========== ====
TOTALS: 7.25 100% $ 942.50 100%
Attorney
John Allured
Category
Settlement 38.75 89% $ 6,393.75 93%
Discovery 4.00 9% $ 400.00 5%
Case Analysis .50 1% $ 50.00 1%
Recusal .50 1% $ 50.00 1%
 ======== ==== =========== ====
TOTALS: 43.75 100% $ 6,893.75 100%
Attorney
Solomon B. Cera
Category
Bankruptcy Proceedings 82.75 74% $ 8,688.75 75%
Case Analysis 18.25 16% $ 1,733.75 15%
Discovery 11.00 10% $ 1,045.00 10%
Summary Judgment Motion .50 $ 52.50
 ======== ==== =========== ====
TOTALS: 112.50 100% $ 11,520.00 100%
Attorney
Timothy Morgan
Category
Discovery 14.00 100% $ 1,470.00 100%
 ======== ==== =========== ====
TOTALS: 14.00 100% $ 1,470.00 100%
Attorney
Carolyn Morris
Category
Discovery 38.00 69% $ 3,610.00 69%
Bankruptcy Proceedings 16.75 31% $ 1,591.25 31%
 ======== ==== =========== ====
TOTALS: 54.75 100% $ 5,201.25 100%
Attorney
Timm A. Verduin
Category
Bankruptcy Proceedings 39.50 98% $ 3,752.50 98%
Case Administration .75 2% $ 71.25 2%
 ======== ==== =========== ====
TOTALS: 40.25 100% $ 3,823.75 100%

*213
Attorney
Stephen R. Berko Total % $ %
Category Hours Hours Value Value
Bankruptcy Proceedings 8.00 100% $ 680.00 100%
 ======== ==== =========== ====
TOTALS: 8.00 100% $ 680.00 100%
Attorney
Lyn I. Barra
Category
Discovery 7.75 100% $ 658.75 100%
 ======== ==== =========== ====
TOTALS: 7.75 100% $ 658.75 100%
Attorney
Mark A. Stump
Category
Class Certification 153.75 52% $ 11,531.25 52%
Pendant Claims 69.25 23% $ 5,193.75 23%
Discovery 44.50 15% $ 3,337.50 15%
Bankruptcy Proceedings 21.00 7% $ 1,575.00 7%
Case Administration 6.50 2% $ 487.50 2%
Motion to Dismiss 1.50 1% $ 112.50 1%
 ======== ==== =========== ====
TOTALS: 296.50 100% $ 22,237.50 100%
 PERCENTAGE OF ATTORNEY WITHIN CATEGORY
Category
Pleadings Total % $ %
Attorney Hours Hours Value Value
Paul F. Bennett 52.00 33% $ 6,770.00 32%
H.D. Finkelstein 43.00 27% $ 3,655.00 17%
Y. Yardley 19.00 12% $ 2,565.00 12%
W.S. Lerach 13.50 9% $ 2,497.50 12%
David B. Gold 11.25 7% $ 2,250.00 10%
D.J. Bershad 6.50 4% $ 1,202.50 6%
Lawrence B. Soicher 5.00 3% $ 750.00 3%
Melvin I. Weiss 4.75 3% $ 1,187.50 6%
John E. Grasberger 3.75 2% $ 412.50 2%
 ======== ==== =========== ====
TOTALS: 158.75 100% $ 21,290.00 100%
Category
Case Administration
Attorney
H.D. Finkelstein 50.50 23% $ 4,292.50 14%
Paul F. Bennett 44.75 20% $ 5,867.50 19%

*214
Category
Case Administration Total % $ %
Attorney Hours Hours Value Value
W.S. Lerach 30.00 13% $ 5,555.00 18%
Richard A. Rogoff 27.00 12% $ 2,912.50 10%
John E. Grasberger 25.65 11% $ 3,625.75 12%
Lawrence B. Soicher 12.50 6% $ 2,350.00 8%
Melvin I. Weiss 10.50 5% $ 2,625.00 9%
Mark A. Stumpf 6.50 3% $ 487.50 1%
David B. Gold 4.50 2% $ 986.25 3%
George Donaldson 4.25 2% $ 552.50 2%
D.J. Bershad 3.30 1% $ 670.50 2%
Y. Yardley 3.00 1% $ 405.00 1%
Tim A. Verduin .75 1% $ 71.25 1%
 ======== ==== =========== ====
TOTALS: 223.20 100% $ 30,401.25 100%
Category
Case Analysis
Attorney
David B. Gold 65.75 21% $ 15,736.25 33%
W.S. Lerach 54.50 18% $ 10,170.00 21%
S.W. Pepich 35.00 11% $ 2,275.00 5%
Paul F. Bennett 29.25 9% $ 4,672.50 10%
D.L. Cupit 24.00 7% $ 1,560.00 3%
Richard A. Rogoff 22.00 7% $ 2,575.00 5%
H.D. Finkelstein 18.50 6% $ 1,572.50 3%
Solomon B. Cera 18.25 6% $ 1,733.75 3%
Melvin I. Weiss 18.00 6% $ 4,537.50 9%
John E. Grasberger 11.25 4% $ 1,340.00 3%
Lawrence B. Soicher 7.50 2% $ 1,125.00 2%
D.J. Bershad 3.50 1% $ 670.00 1%
M.G. Dobies 2.00 1% $ 140.00 1%
John Allured .50 1% $ 50.00 1%
 ======== ==== =========== ====
TOTALS: 310.00 100% $ 48,157.50 100%
Category
Class Certification
Attorney
Richard A. Rogoff 173.50 37% $ 18,217.50 33%
Mark A. Stumpf 153.75 33% $ 11,531.25 20%
David B. Gold 76.50 16% $ 17,312.50 31%
Paul F. Bennett 41.50 9% $ 5,810.00 10%
H.D. Finkelstein 12.50 2% $ 1,062.50 2%
W.S. Lerach 5.00 1% $ 925.00 2%
Y. Yardley 4.00 1% $ 540.00 1%
D.J. Bershad 3.25 1% $ 601.25 1%
 ======== ==== =========== ====
TOTALS: 470.00 100% $ 56,000.00 100%

*215
Category
Motion to Dismiss Total % $ %
Attorney Hours Hours Value Value
W.S. Lerach 45.50 40% $ 8,417.50 49%
Y. Yardley 39.00 35% $ 5,265.00 30%
Richard A. Rogoff 16.50 15% $ 2,047.50 12%
Paul F. Bennett 7.25 6% $ 1,015.00 6%
George Donaldson 3.00 3% $ 390.00 2%
Mark A. Stumpf 1.50 1% $ 112.50 1%
 ======== ==== =========== ====
TOTALS: 112.75 100% $ 17,247.50 100%
Category
Discovery
Attorney
John E. Grasberger 1485.00 32% $218,895.00 33%
Richard A. Rogoff 1418.00 31% $185,382.50 28%
Paul F. Bennett 678.00 15% $117,336.75 18%
D.L. Cupit 195.00 4% $ 12,675.00 2%
H.D. Finkelstein 149.00 3% $ 12,665.00 2%
E. Mikolajczyk 136.00 3% $ 14,960.00 2%
W.S. Lerach 131.55 3% $ 26,086.75 4%
Y. Yardley 99.00 2% $ 13,408.75 2%
David B. Gold 78.50 2% $ 19,778.75 3%
Lawrence B. Soicher 77.75 2% $ 15,318.75 2%
A.M. Laing 58.00 1% $ 4,950.00 1%
Mark A. Stumpf 44.50 1% $ 3,337.50 1%
Carolyn Morris 38.00 1% $ 3,610.00 1%
Melvin I. Weiss 14.00 $ 3,515.00 1%
Timothy Morgan 14.00 $ 1,470.00
Solomon B. Cera 11.00 $ 1,045.00
Lyn I. Barra 7.75 $ 658.75
John Allured 4.00 $ 400.00
D.J. Bershad 3.95 $ 910.75
L. Milberg 1.25 $ 343.75
 ======== ==== =========== ====
TOTALS: 4,644.25 100% $656,748.00 100%
Category
Class Communication
Attorney
Paul F. Bennett 4.50 100% $ 760.00 100%
 ======== ===== =========== ====
TOTALS: 4.50 100% $ 760.00 100%

*216
Category
Rescission Total % $ %
Attorney Hours Hours Value Value
Paul F. Bennett 29.25 42% $ 4,835.00 48%
Richard A. Rogoff 23.50 34% $ 2,937.50 29%
L.B. Simon 13.00 18% $ 1,430.00 14%
David B. Gold 3.50 5% $ 875.00 8%
John E. Grasberger .50 1% $ 55.00 1%
 ======== ==== =========== ====
TOTALS: 69.75 100% $ 10,132.50 100%
Category
Recusal
Attorney
John Allured .50 100% $ 50.00 100%
 ======== ==== =========== ====
TOTALS: 0.50 100% $ 50.00 100%
Category
Settlement
Attorney
Paul F. Bennett 335.25 36% $ 65,032.50 34%
David B. Gold 202.50 21% $ 53,248.75 27%
John E. Grasberger 155.50 16% $ 26,710.00 14%
Richard A. Rogoff 97.00 10% $ 13,477.50 7%
Melvin I. Weiss 70.60 7% $ 19,402.75 10%
John Allured 38.75 4% $ 6,393.75 3%
W.S. Lerach 24.55 3% $ 5,101.75 2%
Lawrence B. Soicher 14.25 1% $ 3,118.75 1%
D.J. Bershad 3.90 1% $ 955.50 1%
J. Spechtrie 1.10 1% $ 269.50 1%
 ======== ==== =========== ====
TOTALS: 943.40 100% $193,710.75 100%
Category
Bankruptcy Proceedings
Attorney
Richard A. Rogoff 497.50 51% $ 65,995.50 50%
Paul F. Bennett 117.25 12% $ 20,647.50 16%
Solomon B. Cera 82.75 9% $ 8,688.75 6%
David B. Gold 55.00 6% $ 14,145.00 10%
A.M. Laing 48.50 5% $ 4,122.50 3%
John E. Grasberger 47.20 5% $ 6,333.50 5%

*217
Category
Bankruptcy Proceedings Total % $ %
Attorney Hours Hours Value Value
Tim A. Verduin 39.50 4% $ 3,752.50 3%
Mark A. Stumpf 21.00 2% $ 1,575.00 1%
Carolyn Morris 16.75 2% $ 1,591.25 1%
W.S. Lerach 16.00 2% $ 3,040.00 2%
E. Mikolajczyk 12.25 1% $ 1,347.50 1%
Stephen R. Berko 8.00 1% $ 680.00 1%
Melvin I. Weiss 2.75 $ 687.50 1%
Lawrence B. Soicher .50 $ 75.00
 ======== ==== =========== ====
TOTALS: 964.95 100% $132,681.50 100%
Category
Trial Preparation
Attorney
Richard A. Rogoff 101.00 31% $ 14,140.00 25%
Paul F. Bennett 82.75 25% $ 15,308.75 27%
John E. Grasberger 80.00 24% $ 14,375.00 26%
David B. Gold 38.75 12% $ 10,462.50 19%
D.L. Cupit 27.00 8% $ 1,755.00 3%
Lawrence B. Soicher 2.00 $ 400.00
 ======== ==== =========== ====
TOTALS: 328.50 100% $ 55,956.25 100%
Category
Summary Judgment Motion
Attorney
Richard A. Rogoff 68.00 79% $ 9,520.00 74%
Paul F. Bennett 18.00 21% $ 3,330.00 26%
Solomon B. Cera .50 $ 52.50
 ======== ==== =========== ====
TOTALS: 86.50 100% $ 12,902.50 100%
Category
Pendant Claims
Attorney
Mark A. Stumpf 69.25 62% $ 5,193.75 47%
Richard A. Rogoff 21.00 18% $ 2,940.00 26%
Paul F. Bennett 20.75 18% $ 2,905.00 25%
John E. Grasberger 6.00 2% $ 660.00 2%
 ======== ==== =========== ====
TOTALS: 117.00 100% $ 11,698.75 100%

*218
Category
Client Representation Total % $ %
Attorney Hours Hours Value Value
Lawrence B. Soicher 10.50 53% $ 1,575.00 48%
Richard A. Rogoff 3.50 18% $ 490.00 15%
D.J. Bershad 2.50 13% $ 462.50 14%
Melvin I. Weiss 2.25 11% $ 562.50 17%
David B. Gold 1.00 5% $ 200.00 6%
 ======== ==== =========== ====
TOTALS: 19.75 100% $ 3,290.00 100%
 PERCENTAGE OF TOTAL LITIGATION BY ATTORNEY PRIOR TO 12/7/82
 HOURS VALUE 
 Atty % File % Atty Atty % File % Atty
Attorney Hours Ttls Ttls Value Ttls Ttls 
Richard A. Rogoff 291.50 21% $ 29,097.50 16%
Paul F. Bennett 256.25 19% $ 34,907.50 19%
H.D. Finkelstein 223.50 16% $ 18,997.50 11%
W.S. Lerach 162.50 12% $ 30,062.50 17%
Y. Yardley 153.25 11% $ 20,688.75 12%
David B. Gold 100.25 7% $ 22,087.50 12%
Mark A. Stump 77.25 6% $ 5,793.75 3%
Lawrence B. Soicher 33.25 3% $ 4,987.50 3%
Melvin I. Weiss 24.75 2% $ 6,187.50 3%
D.J. Bershad 15.25 1% $ 2,821.25 2%
Timothy Morgan 14.00 1% $ 1,470.00 1%
George Donaldson 7.25 1% $ 942.50 1%
John Allured 5.00 $ 500.00
M.G. Dobies 2.00 $ 130.50
John E. Grasberger .50 $ 52.50
 ________ ____ ___________ ____
 Total Attorney Hours: 1,366.50 100% 100%
 Total Attorney Value: $178,736.25

*219
 PERCENTAGE OF TOTAL LITIGATION BY CATEGORY PRIOR TO 12/7/82
 HOURS VALUE 
 Category % Category %Atty
 Hours Hours Value Value
Discovery 490.75 36% $ 60,926.25 34%
Class Certification 387.75 28% $ 49,131.25 27%
Pleadings 154.50 11% $ 20,835.00 12%
Case Administration 133.25 10% $ 17,092.50 9%
Motion to Dismiss 103.75 8% $ 15,987.50 9%
Case Analysis 79.75 6% $ 11,913.75 7%
Client Representation 16.25 1% $ 2,800.00 2%
Recusal .50 $ 50.00
 _________ _____ ___________ ____
TOTALS: $1,366.50 100% $178,736.25 100%
 PERCENTAGE OF CATEGORY WITHIN ATTORNEY PRIOR TO 12/7/82
Attorney Total % $ %
Melvin I. Weiss Hours Hours Value Value
Category
Discovery 8.00 33% $ 2,000.00 33%
Case Administration 6.75 27% $ 1,687.50 27%
Pleadings 4.75 19% $ 1,187.50 19%
Case Analysis 3.00 12% $ 750.00 12%
Client Representation 2.25 9% $ 562.50 9%
 ======== ===== =========== ====
TOTALS: 24.75 100% $ 6,187.50 100%
Attorney
D.J. Bershad
Category
Pleadings 6.50 43% $ 1,202.50 43%
Class Certification 3.25 21% $ 601.25 21%
Client Representation 2.50 16% $ 462.50 16%
Case Administration 1.75 12% $ 323.75 12%
Case Analysis 1.25 8% $ 231.25 8%
 ======== ===== =========== ====
TOTALS: 15.25 100% $ 2,821.25 100%
Attorney
W.S. Lerach
Category
Motion to Dismiss 45.50 28% $ 8,417.50 28%
Discovery 45.50 28% $ 8,417.50 28%
Case Analysis 37.00 23% $ 6,845.00 23%
Case Administration 16.00 10% $ 2,960.00 10%
Pleadings 13.50 8% $ 2,497.50 8%
Class Certification 5.00 3% $ 925.00 37%
 ======== ===== =========== ====
TOTALS: 162.50 100% $ 30,062.50 100%

*220
Attorney
Y. Yardley Total % $ %
Category Hours Hours Value Value
Discovery 88.25 58% $ 11,913.75 58%
Motion to Dismiss 39.00 25% $ 5,265.00 25%
Pleadings 19.00 12% $ 2,565.00 12%
Class Certification 4.00 3% $ 540.00 3%
Case Administration 3.00 2% $ 405.00 2%
 ======== ===== =========== ====
TOTALS: 153.25 100% $ 20,688.75 100%
Attorney
John E. Grasberger
Category
Case Administration .50 100% $ 52.50 100%
 ======== ===== =========== ====
TOTALS: 0.50 100% $ 52.50 100%
Attorney
M.D. Dobies
Category
Case Analysis 2.00 100% $ 140.00 100%
 ======== ===== =========== ====
TOTALS: 2.00 100% $ 140.00 100%
Attorney
H.D. Finkelstein
Category
Discovery 105.50 47% $ 8,967.50 47%
Case Administration 46.00 20% $ 3,910.00 20%
Pleadings 42.50 19% $ 3,612.50 19%
Case Analysis 17.00 8% $ 1,445.00 8%
Class Certification 12.50 6% $ 1,062.50 6%
 ======== ===== =========== ====
TOTALS: 223.50 100% $ 18,997.50 100%
Attorney
Lawrence B. Soicher
Category
Client Representation 10.50 32% $ 1,575.00 32%
Case Analysis 7.50 22% $ 1,125.00 22%
Case Administration 6.00 18% $ 900.00 18%
Pleadings 5.00 15% $ 750.00 15%
Discovery 4.25 13% $ 637.50 13%
 ======== ===== =========== ====
TOTALS: 33.25 100% $ 4,987.50 100%
Attorney
David B. Gold
Category
Class Certification 72.50 72% $ 16,312.50 74%
Pleadings 11.25 11% $ 2,250.00 10%
Discovery 9.50 10% $ 2,056.25 9%
Case Administration 3.00 3% $ 618.75 3%

*221
Attorney
David B. Gold Total % $ %
Category Hours Hours Value Value
Case Analysis 3.00 3% $ 650.00 3%
Client Representation 1.00 1% $ 200.00 1%
 ======== ===== =========== ====
TOTALS: 100.25 100% $ 22,087.50 100%
Attorney
Paul F. Bennett
Category
Discovery 119.00 46% $ 16,607.50 47%
Pleadings 52.00 20% $ 6,770.00 19%
Class Certification 41.50 16% $ 5,810.00 17%
Case Administration 36.00 14% $ 4,642.50 13%
Motion to Dismiss 7.25 3% $ 1,015.00 3%
Case Analysis .50 1% $ 62.50 1%
 ======== ===== =========== ====
TOTALS: 256.25 100% $ 34,907.50 100%
Attorney
Richard A. Rogoff
Category
Class Certification 173.50 59% $ 18,217.50 62%
Discovery 92.50 32% $ 8,437.50 29%
Case Administration 10.00 3% $ 1,040.00 4%
Case Analysis 8.00 3% $ 615.00 2%
Motion to Dismiss 7.50 3% $ 787.50 3%
 ======== ===== =========== ====
TOTALS: 291.50 100% $ 29,097.50 100%
Attorney
George Donaldson
Category
Case Administration 4.25 59% $ 552.50 59%
Motion to Dismiss 3.00 41% $ 390.00 41%
 ======== ===== =========== ====
TOTALS: 7.25 100% $ 942.50 100%
Attorney
John Allured
Category
Discovery 4.00 80% $ 400.00 80%
Case Analysis .50 10% $ 50.00 10%
Recusal .50 10% $ 50.00 10%
 ======== ===== =========== ====
TOTALS: 5.00 100% $ 500.00 100%
Attorney
Timothy Morgan
Category
Discovery 14.00 100% $ 1,470.00 100%
 ======== ===== =========== ====
TOTALS: 14.00 100% $ 1,470.00 100%

*222
Attorney
Mark A. Stump Total % $ %
Category Hours Hours Value Value
Class Certification 75.50 98% $ 5,662.50 98%
Motion to Dismiss 1.50 2% $ 112.50 2%
Discovery .25 $ 18.75
 ======== ===== =========== ====
TOTALS: 77.25 100% $ 5,793.75 100%
 PERCENTAGE OF ATTORNEY WITHIN CATEGORY PRIOR TO 12/7/82
 Total % $ %
Category Hours Hours Value Value
Pleadings
Attorney
Paul F. Bennett 52.00 34% $ 6,770.00 32%
H.D. Finkelstein 42.50 28% $ 3,612.50 17%
Y. Yardley 19.00 12% $ 2,565.00 12%
W.S. Lerach 13.50 9% $ 2,497.50 12%
David B. Gold 11.25 7% $ 2,250.00 11%
D.J. Bershad 6.50 4% $ 1,202.50 6%
Lawrence B. Soicher 5.00 3% $ 750.00 4%
Melvin I. Weiss 4.75 3% $ 1,187.50 6%
 ======== ===== =========== ====
TOTALS: 154.50 100% $ 20,835.00 100%
Category
Case Administration
Attorney
H.D. Finkelstein 46.00 35% $ 3,910.00 23%
Paul F. Bennett 36.00 27% $ 4,642.50 27%
W.S. Lerach 16.00 12% $ 2,960.00 17%
Richard A. Rogoff 10.00 8% $ 1,040.00 6%
Melvin I. Weiss 6.75 5% $ 1,687.50 10%
Lawrence B. Soicher 6.00 5% $ 900.00 5%
George Donaldson 4.25 3% $ 552.50 3%
David B. Gold 3.00 2% $ 618.75 4%
Y. Yardley 3.00 2% $ 405.00 3%
D.J. Bershad 1.75 1% $ 323.75 2%
John E. Grasberger .50 $ 52.50
 ======== ===== =========== ====
TOTALS: 133.25 100% $ 17,092.50 100%
Category
Case Analysis
Attorney
W.S. Lerach 37.00 46% $ 6,845.00 58%
H.D. Finkelstein 17.00 21% $ 1,445.00 12%
Richard A. Rogoff 8.00 10% $ 615.00 5%
Lawrence B. Soicher 7.50 10% $ 1,125.00 10%
David B. Gold 3.00 4% $ 650.00 6%
Melvin I. Weiss 3.00 4% $ 750.00 6%
M.G. Dobies 2.00 3% $ 140.00 1%

*223
Category
Case Analysis Total % $ %
Attorney Hours Hours Value Value
D.J. Bershad 1.25 2% $ 231.25 2%
Paul F. Bennett .50 $ 62.50
John Allured .50 $ 50.00
 ======= ====== =========== ====
TOTALS: 79.75 100% $ 11,913.75 100%
Category
Class Certification
Attorney
Richard A. Rogoff 173.50 45% $ 18,217.50 37%
Mark A. Stump 75.50 19% $ 5,662.50 12%
David B. Gold 72.50 19% $ 16,312.50 33%
Paul F. Bennett 41.50 11% $ 5,810.00 12%
H. D. Finkelstein 12.50 3% $ 1,062.50 2%
W. S. Lerach 5.00 1% $ 925.00 2%
Y. Yardley 4.00 1% $ 540.00 1%
D. J. Bershad 3.25 1% $ 601.25 1%
 ======= ====== =========== ====
TOTALS: 387.75 100% $ 49,131.25 100%
Category
Motion to Dismiss
Attorney
W. S. Lerach 45.50 44% $ 8,417.50 52%
Y. Yardley 39.00 38% $ 5,265.00 34%
Richard A. Rogoff 7.50 7% $ 787.50 5%
Paul F. Bennett 7.25 7% $ 1,015.50 6%
George Donaldson 3.00 3% $ 390.00 2%
Mark A. Stump 1.50 1% $ 112.50 1%
 ======= ====== =========== ====
TOTALS: 103.75 100% $ 15,987.50 100%
Category
Discovery
Attorney
Paul F. Bennett 119.00 24% $ 16,607.50 27%
H. D. Finkelstein 105.50 22% $ 8,967.50 15%
Richard A. Rogoff 92.50 19% $ 8,437.50 14%
Y. Yardley 88.25 18% $ 11,913.75 20%
W. S. Lerach 45.50 9% $ 8,417.50 14%
Timothy Morgan 14.00 3% $ 1,470.00 2%
David B. Gold 9.50 2% $ 2,056.25 3%
Melvin I. Weiss 8.00 1% $ 2,000.00 3%
Lawrence B. Soicher 4.25 1% $ 637.50 1%
John Allured 4.00 1% $ 400.00 1%
Mark A. Stump .25 $ 18.75
 ======= ====== =========== ====
TOTALS: 490.75 100% $ 60,926.25 100%
Category
Recusal
Attorney
John Allured .50 100% $ 50.00 100%
 ======= ====== =========== ====
TOTALS: 0.50 100% $ 50.00 100%

*224
Category
Client Representation Total % $ %
Attorney Hours Hours Value Value
Lawrence B. Soicher 10.50 65% $ 1,575.00 56%
D. J. Bershad 2.50 15% $ 462.50 17%
Melvin I. Weiss 2.25 14% $ 562.50 20%
David B. Gold 1.00 6% $ 200.00 7%
 ======= ====== =========== ====
TOTALS: 16.25 100% $ 2,800.00 100%

PERCENTAGE OF TOTAL LITIGATION BY ATTORNEY  TIME FRAME 12/8/82-3/12/85
 HOURS VALUE 
 Total % $ %
 Attorney Hours Hours Value Value
Richard A. Rogoff 2,118.50 33% $283,348.00 30%
John E. Grasberger 1,689.55 26% $249,890.25 26%
Paul F. Bennett 913.25 14% $162,161.75 17%
David B. Gold 367.00 6% $ 93,268.75 10%
D. L. Cupit 232.50 4% $ 15,112.50 2%
Mark A. Stump 219.25 3% $ 16,443.75 2%
W. S. Lerach 158.10 3% $ 31,731.00 3%
E. Mikolajcyzk 148.25 2% $ 16,307.50 2%
Solomon B. Cera 112.50 2% $ 11,520.00 1%
A. M. Laing 106.50 2% $ 9,072.50 1%
Melvin I. Weiss 86.85 1% $ 23,011.50 2%
Lawrence B. Soicher 76.25 1% $ 15,206.25 1%
Carolyn Morris 54.75 1% $ 5,201.25 1%
H. D. Finkelstein 50.00 1% $ 4,250.00 1%
Timm A. Verduin 40.25 1% $ 3,823.75 1%
S. W. Pepich 35.00 $ 2,275.00
L. B. Simon 13.00 $ 1,430.00
Y. Yardley 10.75 $ 1,495.00
D. J. Bershad 7.75 $ 1,696.25
Stephen R. Berko 8.00 $ 680.00
Lyn I. Barra 7.75 $ 658.75
L. Milberg 1.25 $ 343.75
 ________ ______ ___________ ______
Total Attorney Hours in File: 6,457.00 100% 100%
Total Attorney Value in File: $948,927.50

 PERCENTAGE OF TOTAL LITIGATION BY CATEGORY  TIME FRAME 12/8/82-3/12/85
 HOURS VALUE 
 Category % Category % Atty
 Hours Hours Value Value
Discovery 4,146.00 64% $594,671.75 63%
Bankruptcy Proceedings 964.95 15% $132,681.50 14%
Settlement 373.35 6% $ 79,533.00 8%
Trial Preparation 294.75 5% $ 51,691.25 6%
Case Analysis 230.25 4% $ 36,243.75 4%
Pendant Claims 117.00 2% $ 11,698.75 1%
Case Administration 83.95 1% $ 11,958.75 1%
Class Certification 82.25 1% $ 6,868.75 1%
Summary Judgment Motion 74.50 1% $ 10,682.50 1%
Rescission 69.75 1% $ 10,132.50 1%
Motion to Dismiss 9.00 $ 1,260.00

*225
 HOURS VALUE 
 Category % Category % Atty
 Hours Hours Value Value
Pleadings 4.25 $ 455.00
Class Communication 3.50 $ 560.00
Client Representation 3.50 $ 490.00
 ________ ____ ___________ _____
TOTALS: 6,457.00 100% $948,927.50 100%

 PERCENTAGE OF CATEGORY WITHIN ATTORNEY TIME FRAME 12/8/82-3/12/85
Attorney Total % $ %
Melvin I. Weiss Hours Hours Value Value
Category
Settlement 59.35 69% $ 16,084.00 69%
Case Analysis 15.00 17% $ 3,787.50 17%
Discovery 6.00 7% $ 1,515.00 7%
Case Administration 3.75 4% $ 937.50 4%
Bankruptcy Proceedings 2.75 3% $ 687.50 3%
 ======= ====== =========== =====
TOTALS: 86.85 100% $ 23,011.50 100%
Attorney
D. J. Bershad
Category
Discovery 3.95 51% $ 910.75 54%
Case Analysis 2.25 29% $ 438.75 26%
Case Administration 1.55 20% $ 346.75 20%
 ======= ====== =========== =====
TOTALS: 7.75 100% $ 1,696.25 100%
Attorney
W. S. Lerach
Category
Discovery 86.05 54% $ 17,669.25 56%
Settlement 24.55 16% $ 5,101.75 16%
Case Analysis 17.50 11% $ 3,325.00 10%
Bankruptcy Proceedings 16.00 10% $ 3,040.00 10%
Case Administration 14.00 9% $ 2,595.00 8%
 ======= ====== =========== =====
TOTALS: 158.10 100% $ 31,731.00 100%
Attorney
L. Milberg
Category
Discovery 1.25 100% $ 343.75 100%
 ======= ====== =========== =====
TOTALS: 1.25 100% $ 343.75 100%

*226
Attorney
Y. Yardley Total % $ %
Category Hours Hours Value Value
Discovery 10.75 100% $ 1,495.00 100%
 ======= ====== =========== =====
TOTALS: 10.75 100% $ 1,495.00 100%
Attorney
John E. Grasberger
Category
Discovery 1,482.50 88% $218,445.00 87%
Trial Preparation 73.00 4% $ 13,115.00 5%
Bankruptcy Proceedings 47.20 3% $ 6,333.50 3%
Settlement 40.20 2% $ 5,956.00 2%
Case Administration 25.15 1% $ 3,573.25 1%
Case Analysis 11.25 1% $ 1,340.00 1%
Pendant Claims 6.00 1% $ 660.00 1%
Pleadings 3.75 $ 412.50
Rescission 0.50 $ 55.00
 ======== ====== =========== =====
TOTALS: 1,689.55 100% $249,890.25 100%
Attorney
L. B. Simon
Category
Rescission 13.00 100% $ 1,430.00 100%
 ======== ====== =========== =====
TOTALS: 13.00 100% $ 1,430.00 100%
Attorney
E. Mikolajczyk
Category
Discovery 136.00 92% $ 14,960.00 92%
Bankruptcy Proceedings 12.25 8% $ 1,347.50 8%
 ======= ====== =========== =====
TOTALS: 148.25 100% $ 16,307.50 100%
Attorney
A. M. Laing
Category
Discovery 58.00 54% $ 4,950.00 55%
Bankruptcy Proceedings 48.50 46% $ 4,122.50 45%
 ======= ====== =========== =====
TOTALS: 106.50 100% $ 9,072.50 100%
Attorney
S. W. Pepich
Category
Case Analysis 35.00 100% $ 2,275.00 100%
 ======= ====== =========== =====
TOTALS: 35.00 100% $ 2,275.00 100%

*227
Attorney
D. L. Culpit Total % $ %
Category Hours Hours Value Value
Discovery 195.00 84% $ 12,675.00 84%
Case Analysis 24.00 10% $ 1,560.00 10%
Trial Preparation 13.50 6% $ 877.50 6%
 ======== ====== =========== =====
TOTALS: 232.50 100% $ 15,112.50 100%
Attorney
H. D. Finkelstein
Category
Discovery 43.50 87% $ 3,697.50 87%
Case Administration 4.50 9% $ 382.50 9%
Case Analysis 1.50 3% $ 127.50 3%
Pleadings 0.50 1% $ 42.50 1%
 ======== ====== =========== =====
TOTALS: 50.00 100% $ 4,250.00 100%
Attorney
Lawrence B. Soicher
Category
Discovery 73.50 96% $ 14,681.25 96%
Trial Preparation 1.25 1% $ 250.00 1%
Case Administration 0.50 1% $ 100.00 1%
Settlement 0.50 1% $ 100.00 1%
Bankruptcy Proceedings 0.50 1% $ 75.00 1%
 ======== ====== =========== =====
TOTALS: 76.25 100% $ 15,206.25 100%
Attorney
David B. Gold
Category
Settlement 132.50 36% $ 33,610.00 36%
Discovery 69.00 19% $ 17,722.50 19%
Case Analysis 62.75 17% $ 15,086.25 16%
Bankruptcy Proceedings 55.00 15% $ 14,145.00 15%
Trial Preparation 38.75 11% $ 10,462.50 11%
Class Certification 4.00 1% $ 1,000.00 1%
Rescission 3.50 1% $ 875.00 1%
Case Administration 1.50 $ 367.50
 ======== ====== =========== =====
TOTALS: 367.00 100% $ 93,268.75 100%
Attorney
Paul F. Bennett
Category
Discovery 559.00 61% $100,729.25 62%
Bankruptcy Proceedings 117.25 13% $ 20,647.50 12%
Trial Preparation 76.25 9% $ 14,106.25 9%
Settlement 63.75 7% $ 11,433.75 7%
Rescission 29.25 3% $ 4,835.00 3%
Case Analysis 28.75 3% $ 4,610.00 3%
Pendant Claims 20.75 2% $ 2,905.00 2%

*228
Attorney
D. L. Culpit Total % $ %
Category Hours Hours Value Value
Case Administration 8.75 1% $ 1,225.00 1%
Summary Judgment Motion 6.00 1% $ 1,110.00 1%
Class Communication 3.50 $ 560.00
 ======== ===== =========== ====
TOTALS: 913.25 100% $162,161.75 100%
Attorney
Richard A. Rogoff
Category
Discovery 1320.50 62% $176,245.00 62%
Bankruptcy Proceedings 497.50 24% $ 65,995.50 23%
Trial Preparation 92.00 4% $ 12,880.00 5%
Summary Judgment Motion 68.00 3% $ 9,520.00 3%
Settlement 52.50 3% $ 7,247.50 3%
Rescission 23.50 1% $ 2,937.50 1%
Pendant Claims 21.00 1% $ 2,940.00 1%
Case Administration 17.00 1% $ 1,872.50 1%
Case Analysis 14.00 1% $ 1,960.00 1%
Motion to Dismiss 9.00 $ 1,260.00
Client Representation 3.50 $ 490.00
 ======== ====== =========== =====
TOTALS: 2,118.50 100% $283,348.00 100%
Attorney
Solomon B. Cera
Category
Bankruptcy Proceedings 82.75 74% $ 8,688.75 76%
Case Analysis 18.25 16% $ 1,733.75 15%
Discovery 11.00 10% $ 1,045.00 9%
Summary Judgment Motion 0.50 $ 52.50
 ======= ====== =========== =====
TOTALS: 112.50 100% $ 11,520.00 100%
Attorney
Carolyn Morris
Category
Discovery 38.00 69% $ 3,610.00 69
Bankruptcy Proceedings 16.75 31% $ 1,591.25 31%
 ======== ====== =========== ====
TOTALS: 54.75 100% $ 5,201.25 100%
Attorney
Timm A. Verduin
Category
Bankruptcy Proceedings 39.50 98% $ 3,752.50 98%
Case Administration 0.75 2% $ 71.25 2%
 ======== ====== =========== =====
 40.25 100% $ 3,823.75 100%
Attorney
Stephen R. Berko
Category
Bankruptcy Proceedings 8.00 100% $ 680.00 100%
 ======== ====== =========== =====
TOTALS: 8.00 100% $ 680.00 100%

*229
Attorney
Lynn I. Barra Total % $ %
Category Hours Hours Value Value
Discovery 7.75 100% $ 658.75 100%
 ======== ====== =========== =====
TOTALS: 7.75 100% $ 658.75 100%
Attorney
Mark A. Stump
Category
Class Certification 78.25 36% $ 5,868.75 36%
Pendant Claims 69.25 31% $ 5,193.75 31%
Discovery 44.25 20% $ 3,318.75 20%
Bankruptcy Proceedings 21.00 10% $ 1,575.00 10%
Case Administration 6.50 3% $ 487.00 3%
 ======== ====== =========== =====
TOTALS: 219.25 100% $ 16,443.75 100%
 PERCENTAGE OF ATTORNEY WITHIN CATEGORY  TIME
 FRAME 12/8/82-3/12/85
 Total % $ %
Category Hours Hours Value Value
Pleadings
Attorney
John E. Grasberger 3.75 88% $ 412.50 91%
H.D. Finkelstein 0.50 12% $ 42.50 9%
 ======== ====== =========== =====
TOTALS: 4.25 100% $ 455.00 100%
Category
Case Administration
Attorney
John E. Grasberger 25.15 30% $ 3,573.25 30%
Richard A. Rogoff 17.00 20% $ 1,872.50 15%
W.S. Lerach 14.00 17% $ 2,595.00 22%
Paul F. Bennett 8.75 10% $ 1,225.00 10%
Mark A. Stump 6.50 8% $ 487.50 4%
H.D. Finkelstein 4.50 5% $ 382.50 3%
Melvin I. Weiss 3.75 4% $ 937.50 8%
D.J. Bershad 1.55 2% $ 346.75 3%
David B. Gold 1.50 2% $ 367.50 3%
Timm A. Verduin 0.75 1% $ 71.25 1%
Lawrence B. Soicher 0.50 1% $ 100.00 1%
 ======== ====== =========== =====
TOTALS: 83.95 100% $ 11,958.75 100%
Category
Case Analysis
Attorney
David B. Gold 62.75 27% $ 15,086.25 42%
S.W. Pepich 35.00 15% $ 2,275.00 6%

*230
Category
Case Analysis Total % $ %
Attorney Hours Hours Value Value
Paul F. Bennett 28.75 12% $ 4,610.00 13%
D.L. Cupit 24.00 10% $ 1,560.00 4%
Solomon B. Cera 18.25 8% $ 1,733.75 5%
W.S. Lerach 17.50 8% $ 3,325.00 9%
Melvin I. Weiss 15.00 7% $ 3,787.50 10%
Richard A. Rogoff 14.00 6% $ 1,960.00 5%
John E. Grasberger 11.25 5% $ 1,340.00 4%
D.J. Bershad 2.25 1% $ 438.75 1%
H.D. Finkelstein 1.50 1% $ 127.50 1%
 ======= ====== =========== =====
TOTALS: 230.25 100% $ 36,243.75 100%
Category
Case Certification
Attorney
Mark A. Stump 78.25 95% $ 5,868.75 85%
David B. Gold 4.00 5% $ 1,000.00 15%
 ======== ====== =========== =====
TOTALS: 82.25 100% $ 6,868.75 100%
Category
Motion to Dismiss
Attorney
Richard A. Rogoff 9.00 100% $ 1,260.00 100%
 ======== ====== =========== =====
TOTALS: 9.00 100% $ 1,260.00 100%
Category
Discovery
Attorney
John E. Grasberger 1482.50 36% $218,445.00 37%
Richard. A. Rogoff 1320.50 32% $176,245.00 30%
Paul F. Bennett 559.00 14% $100,729.25 17%
D.L. Cupit 195.00 5% $ 12,675.00 2%
E. Mikolajczyk 136.00 3% $ 14,960.00 2%
W.S. Lerach 86.05 2% $ 17,669.25 3%
Lawrence B. Soicher 73.50 2% $ 14,681.25 2%
David B. Gold 69.00 2% $ 17,722.50 3%
A.M. Laing 58.00 1% $ 4,950.00 1%
Mark A. Stump 44.25 1% $ 3,318.75 1%
H.D. Finkelstein 43.50 1% $ 3,697.50 1%
Carolyn Morris 38.00 1% $ 3,610.00 1%
Solomon B. Cera 11.00 $ 1,045.00
Y. Yardley 10.75 $ 1,495.00
Lynn I. Barra 7.75 $ 658.75
Melvin I. Weiss 6.00 $ 1,515.00

*231
Category
Discovery Total % $ %
Attorney Hours Hours Value Value
D.J. Bershad 3.95 $ 910.75
L. Milberg 1.25 $ 343.75
 ======== ===== =========== =====
TOTALS: 4,146.00 100% $594,671.75 100%
Category
Class Communication
Attorney
Paul F. Bennett 3.50 100% $ 560.00 100%
 ======== ===== =========== =====
TOTALS: 3.50 100% $ 560.00 100%
Category
Rescission
Attorney
Paul F. Bennett 29.25 42% $ 4,835.00 48%
Richard A. Rogoff 23.50 34% $ 2,937.50 29%
L.B. Simon 13.00 19% $ 1,430.00 14%
David B. Gold 3.50 5% $ 875.00 9%
John E. Grasberger 0.50 $ 55.00
 ======== ===== =========== =====
TOTALS: 69.75 100% $ 10,132.50 100%
Category
Settlement
Attorney
David B. Gold 132.50 35% $ 33,610.00 42%
Paul F. Bennett 63.75 17% $ 11,433.75 15%
Melvin I. Weiss 59.35 16% $ 16,084.00 20%
Richard A. Rogoff 52.50 14% $ 7,247.50 9%
John E. Grasberger 40.20 11% $ 5,956.00 8%
W.S. Lerach 24.55 7% $ 5,101.75 6%
Lawrence B. Soicher 0.50 $ 100.00
 ======== ===== =========== =====
TOTALS: 373.35 100% $ 79,533.00 100%
Category
Bankruptcy Proceedings
Attorney
Richard A. Rogoff 497.50 51% $ 65,995.50 50%
Paul F. Bennett 117.25 12% $ 20,647.50 16%
Solomon B. Cera 82.75 9% $ 8,688.75 6%
David B. Gold 55.00 6% $ 14,145.00 11%
A.M. Laing 48.50 5% $ 4,122.50 3%
John E. Grasberger 47.20 5% $ 6,333.50 5%
Timm A. Verduin 39.50 4% $ 3,752.50 3%
Mark A. Stump 21.00 2% $ 1,575.00 1%
Carolyn Morris 16.75 2% $ 1,591.25 1%

*232
Category
Bankruptcy Proceedings Total % $ %
Attorney Hours Hours Value Value
W.S. Lerach 16.00 2% $ 3,040.00 2%
E. Mikolajczyk 12.25 1% $ 1,347.50 1%
Stephen R. Berko 8.00 1% $ 680.00 1%
Melvin I. Weiss 2.75 $ 687.50
Lawrence B. Soicher 0.50 $ 75.00
 ====== ===== =========== =====
TOTALS: 964.95 100% $132,681.50 100%
Category
Trial Preparation
Attorney
Richard A. Rogoff 92.00 31% $ 12,880.00 24%
Paul F. Bennett 76.25 26% $ 14,106.25 28%
John E. Grasberger 73.00 25% $ 13,115.00 26%
David B. Gold 38.75 13% $ 10,462.50 20%
D.L. Cupit 13.50 5% $ 877.50 2%
Lawrence B. Soicher 1.25 $ 250.00
 ====== ===== =========== =====
TOTALS: 291.75 100% $ 51,206.25 100%
Category
Summary Judgment Motion
Attorney
Richard A. Rogoff 68.00 91% $ 9,520.00 89%
Paul F. Bennett 6.00 8% $ 1,110.00 10%
Solomon B. Cera 0.50 1% $ 52.50 1%
 ====== ===== =========== =====
TOTALS: 74.50 100% $ 10,682.50 100%
Category
Pendant Claims
Attorney
Mark A. Stump 69.25 59% $ 5,193.75 44%
Richard A. Rogoff 21.00 18% $ 2,940.00 25%
Paul F. Bennett 20.75 18% $ 2,905.00 25%
John E. Grasberger 6.00 5% $ 660.00 6%
 ====== ===== =========== =====
TOTALS: 117.00 100% $ 11,698.75 100%
Category
Client Representation
Attorney
Richard A. Rogoff 3.50 100% $ 490.00 100%
 ====== ===== =========== =====
TOTALS: 3.50 100% $ 490.00 100%

*233
 PERCENTAGE OF TOTAL LITIGATION BY ATTORNEY 
 TIME FRAME 3/13/85  END
 HOURS VALUE 
 Total % $ %
 Hours Hours Value Value
Attorney
Paul F. Bennett 291.00 46% $ 57,221.25 46%
John E. Grasberger 124.80 20% $ 22,464.00 18%
David B. Gold 70.00 11% $ 19,638.75 16%
Richard A. Rogoff 58.50 9% $ 8,190.00 6%
John Allured 38.75 6% $ 6,393.75 5%
Lawrence B. Soicher 20.50 3% $ 4,518.75 4%
D.L. Cupit 13.50 2% $ 877.50 1%
Melvin I. Weiss 11.25 2% $ 3,318.75 3%
D.J. Bershad 3.90 1% $ 955.50 1%
J. Spechtrie 1.10 $ 269.50
 ______ ____ ___________ ____
TOTALS: 633.30 100% $123,847.75 100%
 PERCENTAGE OF TOTAL LITIGATION BY CATEGORY 
 TIME FRAME 3/13/85  END
 HOURS VALUE 
 Category % Category %
CATEGORY Hours Hours Value Value
Settlement 570.05 90% $114,177.75 92%
Trial Preparation 36.75 6% $ 4,750.00 4%
Summary Judgment Motion 12.00 2% $ 2,220.00 2%
Discovery 7.50 1% $ 1,150.00 1%
Case Administration 6.00 1% $ 1,350.00 1%
Class Communication 1.00 $ 200.00
 ______ _____ ___________ _____
TOTALS: 633.30 100% $123,847.75 100%
 PERCENTAGE OF CATEGORY WITHIN ATTORNEY 
 TIME FRAME 3/13/85  END
Attorney Total % $ %
Melvin I. Weiss Hours Hours Value Value
Category
Settlement 11.25 100% $ 3,318.75 100%
 ====== ===== ========== =====
TOTALS: 11.25 100% $ 3,318.75 100%
Attorney
D.J. Bershad
Category
Settlement 3.90 100% $ 955.50 100%
 ====== ===== ========== =====
TOTALS: 3.90 100% $ 955.50 100%

*234
Attorney
J. Spechtrie Total % $ %
Category Hours Hours Value Value
Settlement 1.10 100% $ 269.50 100%
 ======= ===== ========== =====
TOTALS: 1.10 100% $ 269.50 100%
Attorney
John E. Grasberger
Category
Settlement 115.30 92% $20,754.00 92%
Trial Preparation 7.00 6% $ 1,260.00 6%
Discovery 2.50 2% $ 450.00 2%
 ======= ===== ========== =====
TOTALS: 124.80 100% $22,464.00 100%
Attorney
D.L. Cupit
Category
Trial Preparation 13.50 100% $ 877.50 100%
 ======= ===== ========== =====
TOTALS: 13.50 100% $ 877.50 100%
Attorney
Lawrence B. Soicher
Category
Settlement 13.75 67% $ 3,018.75 67%
Case Administration 6.00 29% $ 1,350.00 30%
Trial Preparation 0.75 4% $ 150.00 3%
 ======= ===== ========== =====
TOTALS: 20.50 100% $ 4,518.75 100%
Attorney
David B. Gold
Category
Settlement 70.00 100% $19,638.75 100%
 ======= ===== ========== =====
TOTALS: 70.00 100% $19,638.75 100%
Attorney
Paul F. Bennett
Category
Settlement 271.50 94% $53,598.75 94%
Summary Judgment Motion 12.00 4% $ 2,220.00 4%
Trial Preparation 6.50 2% $ 1,202.50 2%
Class Communication 1.00 $ 200.00
 ======= ===== ========== =====
TOTALS: 291.00 100% $57,221.25 100%

*235
Attorney
Richard A. Rogoff Total % $ %
Category Hours Hours Value Value
Settlement 44.50 76% $ 6,230.00 76%
Trial Preparation 9.00 15% $ 1,260.00 15%
Discovery 5.00 9% $ 700.00 9%
 ====== ===== ========== =====
TOTALS: 58.50 100% $ 8,190.00 100%
Attorney
John Allured
Category
Settlement 38.75 100% $ 6,393.75 100%
 ====== ===== ========== =====
TOTALS: 38.75 100% $ 6,393.75 100%

 PERCENTAGE OF ATTORNEY WITHIN CATEGORY TIME FRAME 3/13/85END
Category Total % $ %
Case Administration Hours Hours Value Value
Attorney
Lawrence B. Soicher 6.00 100% $ 1,350.00 100%
 ====== ===== =========== =====
TOTALS: 6.00 100% $ 1,350.00 100%
Category
Discovery
Attorney
Richard A. Rogoff 5.00 67% $ 700.00 61%
John E. Grasberger 2.50 33% $ 450.00 39%
 ====== ===== =========== =====
TOTALS: 7.50 100% $ 1,150.00 100%
Category
Class Communication
Attorney
Paul F. Bennett 1.00 100% $ 200.00 100%
 ====== ===== =========== =====
TOTALS: 1.00 100% $ 200.00 100%

*236
Category
Settlement Total % $ %
Attorney Hours Hours Value Value
Paul F. Bennett 271.50 48% $ 53,598.75 47%
John E. Grasberger 115.30 20% $ 20,754.00 18%
David B. Gold 70.00 12% $ 19,638.75 17%
Richard A. Rogoff 44.50 8% $ 6,230.00 5%
John Allured 38.75 7% $ 6,393.75 6%
Lawrence B. Soicher 13.75 2% $ 3,018.75 3%
Melvin I. Weiss 11.25 2% $ 3,318.75 3%
D.J. Bershad 3.90 1% $ 955.50 1%
J. Spechtrie 1.10 $ 269.50
 ====== ===== =========== =====
TOTALS: 570.05 100% $114,177.75 100%
Category
Trial Preparation
Attorney
D.L. Cupit 13.50 37% $ 877.50 18%
Richard A. Rogoff 9.00 24% $ 1,260.00 27%
John E. Grasberger 7.00 19% $ 1,260.00 27%
Paul F. Bennett 6.50 18% $ 1,202.50 25%
Lawrence B. Soicher 0.75 2% $ 150.00 3%
 ====== ===== ========== =====
TOTALS: 36.75 100% $ 4,750.00 100%
Category
Summary Judgment Motion
Attorney
Paul F. Bennett 12.00 100% $ 2,220.00 100%
 ====== ===== =========== =====
TOTALS: 12.00 100% $ 2,220.00 100%

SUPPLEMENTAL ORDER

I
This class action securities fraud case was settled in the amount of $11,475,000. In connection with the final approval and order settling the case, class counsel for the plaintiffs submitted an application seeking attorneys' fees and costs in the amount of almost $4 million. On January 13, 1986, the Court appointed James F. Thacher, Esquire, as Special Master to review and evaluate the joint application for fees and costs.
The Special Master was ordered to carefully scrutinize the application in light of the Court's fiduciary duty, in a class action suit such as this, to serve as a guardian of the rights of absent class members. The Court requested the Special Master to carefully screen the time records of the fee applicants to assure that the hours claimed were not duplicative, wasteful, or excessive, and to analyze the Johnson-Kerr factors to arrive at a reasonable fee recommendation.
The Special Master then undertook the considerable task (described by the Third Circuit Task Force as a "cumbersome, enervating, and often surrealistic process") of examining and evaluating all the time records and documents submitted by the fee applicants. In addition to the detailed *237 cross-checks of documented attorney time spent on the litigation that the Special Master devised, the study encompassed a computer breakdown of all the billings to determine the percentage of total litigation time spent by each attorney and the percentage of total litigation dedicated to each different category or phase of the case. See Report of Special Master and Appendix. This computer evaluation of the billings, which enabled the Court to determine the accuracy of the time records submitted, was an invaluable tool in arriving at a final lodestar and reasonable fee award.
On July 10, 1986, the Court approved the Report of the Special Master and made a tentative award of attorneys' fees and costs. The fee applicants then submitted written comments on the Report, and the Court entertained their oral arguments at a hearing on July 29, 1986.

II
Attorneys' fees may be awarded under the common fund doctrine in a case such as this where the attorneys' efforts have benefited those who would otherwise enjoy the benefit of the fund created without having shared the cost. See Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); In re Nucorp Energy, Inc., 764 F.2d 655, 661 (9th Cir.1985).
In a class action suit, the district court must act as a fiduciary to guard the rights of absent class members. Objections by class members are rare, and defendants, having made their contribution to the settlement, are uninterested in the distribution. It is, therefore, incumbent upon the trial court judge to act with "moderation and a jealous regard to the rights of those who are interested in the fund" in determining what is a reasonable fee to be paid to class counsel for their efforts in settling the litigation and creating the fund. City of Detroit v. Grinnell Corp., 495 F.2d 448, 469 (2d Cir.1974) ("Grinnell I"), quoting Trustees v. Greenough, 105 U.S. 527, 536, 15 Otto 527, 536, 26 L.Ed. 1157 (1881).
The fee award is left to the discretion of the trial court. Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 838 n. 8 (9th Cir.1982). The courts have utilized three main methods in making this determination: the percentage fee; the Johnson-Kerr method, which involves an analysis of the twelve factors first set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974), and adopted by the Ninth Circuit in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir.1975); and the lodestar approach developed in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 166-69 (3d Cir.1973). Nevertheless, the amount of awards, and the methods by which such amounts are reached, have been subjected to a great deal of criticism. See In re Fine Paper Litigation, 98 F.R.D. 48, 67-86 (E.D.Pa.1983), aff'd in part, rev'd in part, 751 F.2d 562 (3d Cir.1984); In re Continental Illinois Securities Litigation, 572 F.Supp. 931, 932-33 (N.D.Ill. 1983); Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985) (hereinafter cited as the "Task Force Report"); Arthur Miller, Attorneys' Fees in Class Actions (Federal Judicial Center 1980).
The Ninth Circuit has responded to the criticism of the Johnson-Kerr and the lodestar approaches by blending the best features of the two. See Moore, 682 F.2d at 840, approving the procedures followed in In re Capital Underwriters, Inc. Securities Litigation, 519 F.Supp. 92, 99 (N.D. Cal.1981). The blending is accomplished by first arriving at a lodestar amount through an evaluation of the hours spent on the case, and then considering the other Johnson-Kerr factors in setting the hourly rate and making upward or downward adjustments. Moore, 682 F.2d at 840-41.
This is the approach that the Special Master has followed in making his recommendation to this Court, and it is the approach the Court itself has used, in considering the Report of the Special Master, and the papers and arguments of the fee applicants. *238 In spite of the repeated urgings of fee applicants, the Court did not choose to use the straight percentage method in determining a reasonable fee in this case.
In requesting the Court to use the percentage method, or some variant of it, in this case, the fee applicants rely on the recommendation of the Task Force Report that in common fund cases "the district court * * * at the earliest practicable moment, should attempt to establish a percentage fee arrangement." Task Force Report, 108 F.R.D. at 255. The Court has reviewed the Task Force Report with interest. The Task Force assumed that the "earliest practicable moment" would be immediately after the pleadings closed. There was no mention of arriving at the percentage method at the end of the case. Rather, the Task Force recommended that in appropriate cases the trial court appoint a nonjudicial representative for the class to negotiate the percentage fee "in the usual marketplace manner" and then submit the proposal for court approval. In fact, one of the reasons for recommending a percentage fee was that such a scheme could be established early in the litigation, thereby reducing "any and all inducement or inclination to increase the number of * * * hours." Id. at 258. Furthermore, the Task Force was careful to clarify its recommendation by insisting that the trial court retain discretion to shift such a negotiated percentage fee plan back to the lodestar approach, should subsequent events indicate the propriety of such an order.
Although this Court recognizes the historical use of a percentage of recovery as a permissible means of calculating a reasonable attorneys' fee in a common fund case, see Blum v. Stenson, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1549 n. 16, 79 L.Ed.2d 891 (1984), it does not read footnote 16 in Blum to mandate the percentage method as the only proper approach in common fund cases.
Nonetheless, it must be emphasized that the Court did duly consider the relationship between the requested fee and the result achieved in this case, as requested by the fee applicants, and indeed, as mandated by the Johnson-Kerr and Ninth Circuit blending approaches. The Court has weighed all of these factors in arriving at its final determination of reasonable attorneys' fees and costs in this case, and will continue to do so until the Ninth Circuit indicates that another approach is preferable.
Moreover, the Court has followed the guidelines set out in two recent Supreme Court decisions. In Blum, 465 U.S. at 898, 104 S.Ct. at 1548, Justice Powell warned that neither the complexity nor the novelty of the issues is an appropriate factor to consider in determining whether to increase the basic fee award, because these factors are presumably reflected in the number of billable hours recorded. In July of this year, this was reiterated by Justice White in Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air, ___ U.S. ___, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), who admonished that the novelty and complexities of the issues, the quality of representation, and the results obtained should not ordinarily serve as independent bases for increasing the basic fee award. "Although upward adjustments of the lodestar figure are still permissible * * * such modifications are proper only in `rare' and `exceptional' cases, supported by both `specific evidence' on the record and detailed findings." Id., 106 S.Ct. at 3098.[1]
Thus, the Court has resolved that the Gold firm's historical lodestar fee is $654,912.50, the Weiss firm's historical lodestar fee is $378,658.75, and for Lawrence G. Soicher, $7,343.75. These lodestar fees will be enhanced by a multiplier of 2.0 or 200 percent. In addition, costs in the *239 amount of $189,095.15 are awarded to the Gold firm, and costs of $278,643.57 are awarded to the Weiss firm.
Accordingly,
IT IS HEREBY ORDERED that:
1. The Gold firm is awarded attorneys' fees in the amount of $1,309,825 and costs of $189,095.15.
2. The Weiss firm is awarded attorneys' fees in the amount of $757,317.50 and costs of $278,643.57.
3. Lawrence G. Soicher is awarded attorney's fees in the amount of $14,687.50.
NOTES
[1] Fee applicants in urging return to a reasonable fee based on a percentage of the fund-in-court rely on footnote 16 of Blum v. Stenson, 465 U.S. 886, 900 [104 S.Ct. 1541, 1549, 79 L.Ed.2d 891] (1984) ("Footnote 16") and the Court Awarded Attorney Fees, Report of the Third Circuit Task Force ("Task Force Report"), 108 F.R.D. 237 (1985). It is true the Supreme Court and the Task Force both recognize the historical use of a percentage of recovery as a permissible means of calculating a reasonable attorneys' fee in a fund-in-court case, as apparently did the Ninth Circuit, before Moore v. Jas. H. Matthews & Co., 682 F.2d 830 (9th Cir.1985 [1982]) and In re Capital Underwriters, Inc. Securities Litigation, 519 F.Supp. 92, 99 (N.D.Cal. 1981). However, Footnote 16, considered in the context of the Court's opinion, appears to be directed to the point that although a percentage of recovery is a permissible standard in a "fund-in-court" case, it is an impermissible standard in a statutory fee case because in the latter the monetary recovery may bear no relationship to the benefits conferred on the client class or to society as a whole as a result of the fee applicant attorney's efforts.

At the same time, it is equally clear that in a securities class action litigation, the amount of recovery may be disproportionate to the attorneys' efforts. For example, Fee Applicants mention a fee of "slightly less than" 30 percent of the $11,425,000 recovery as justifiable in light of the results of their efforts. If nothing were to change in the case except that the amount of the offering were doubled, the same percentage of recovery, i.e. 30 percent, would produce twice the fee. More often than not, it would seem that in class action securities litigation, the dollar volume of the transaction(s) alleged to be fraudulent is the single most important variable in establishing the amount of the fund-in-court. This fact is recognized in Phemister v. Harcourt Brace Javanovick [Jovanovick], Inc., 1984-2 Trade Cas. (CCH) ¶ 66,234 (N.D.Ill. Sept. 1984), where court-awarded attorneys' fees ranged from 9-20 percent depending on the total fund-in-court, and, by analogy, in the California Probate Code § 910, 901, where attorneys' fees are tied to a sliding percentage based on the amount of the estate. In order to prevent obvious windfalls where compensation is tied to the amount of the fund-in-court, a sliding scale percentage based on the amount of potential damages subject to adjustment for Johnson-Kerr factors could be established by the court (or negotiated) at the time of class certification.
[2] Fifty-five percent of Fee Applicants' billed time was spent on discovery matters.
[3] Although forty-five depositions were noticed and conducted by Fee Applicants, only half a dozen transcripts appear to have been filed.
[4] Who was called? What material was reviewed  a prospectus, a registration statement, an article in the Wall Street Journal or San Jose Mercury News?
[5] Who is Skornia? How much of the time is attributable to lunch? What public documents?
[6] For example, on July 10, 1985, John Specthrie ($245 per hour), Melvyn I. Weiss ($295 per hour), and by telephone, John E. Grasberger ($180 per hour), all of the Weiss firm, conferred for half an hour "re hearing, class, etc." This half hour telephone conference at the participants current rates cost the class $360, which, if multiplied by the requested current multiplier of 2.3, would cost the plaintiff class $828.
[7] Complaint No. 1091:

 Hours
 Melvyn I. Weiss 4
 William S. Lerach 23
 H. Finkelstein 16
 ___
 Total 43

[8] The inaccuracies are so pervasive that the Special Master is led to the conclusion that Mr. Lerach did not keep contemporaneous time records and that his entries are the product of a careless reconstruction. In addition to the inaccuracy of the entries, the activities described would seem to be of questionable benefit to the class. The litigation was being conducted in the Northern District. The defendants were by and large present in the Northern District, most of the discovery took place in the Northern District, and the defendants' lawyers offices were in the Northern District. Moreover, Mr. Lerach's partner, Mr. Grasberger, was in regular touch with Mr. Weiss for supervision and with Mr. Bennett of the Gold firm for coordination. As a result, the described activities of Mr. Lerach, if accepted at face value, appear largely duplicative.
[9] In Harmsen v. Smith, CCH Fed.Sec.Law Rep. ¶ 92,379, (S.D.Cal.1985), litigation arising out of the demise of the United States National Bank, class counsel sought attorneys' fees of approximately $3.9 million for services rendered over a period of twelve years involving a four month jury trial, sixty motions and "numerous interlocutory appeals, which resulted in a class recovery of approximately $9.1 million. District Judge Enright found the following hourly time charges used by class counsel to calculate current and historic lodestar values to be "well within the normal and reasonable rates for similarly experienced attorneys during the relevant periods:

1973-1978: Partners, $125; Associates, $75; Law Clerks, $10.
1979-1982: Partners, $150; Associates, $100; Law Clerks, $25.
1982-1985: Partners, $150-200; Associates, $125; Law Clerks, $25."
[10] In International Distribution Centers v. Walsh Trucking Co., 62 B.R. 723, CCH Trade Reg.Rpt. ¶ 66,922, (S.D.N.Y.1986), the court, in applying the Lindy-Grinnell lodestar approach in determining the prevailing plaintiffs' attorneys' fees in an antitrust action tried eight weeks and resulting in a trebled award of $39.6 million, allowed for the period October 1983  August 1984 hourly rates of $135-$250 as in line with hourly rates charged by attorneys of similar experience in the New York area. On the subject of results obtained, "The Court determines that this substantial verdict would not have been obtained if not for the resourceful endeavors of the Hoffman firm * * *. For the above reasons the Court determines that the lodestar should be adjusted by a factor of 10% to reflect the risks and skills demonstrated in the litigation. Thus, the total of $764,086.25 awarded under the initial fee application shall be increased to $840,489.37."
[11] The deep pocket officer and director defendants shared the same goal as plaintiffs in bringing the O & D carrier to the settlement table. It was principally through the ingenuity of defense counsel that this goal was achieved and resulted in the O & D carriers' substantial contribution to the global settlement.
[12] It is significant that 55 percent of the time spent in this case was devoted to discovery, 11 percent to the collateral and largely unsuccessful bankruptcy proceedings, and 11 percent to settlement. Other than discovery matters, the only successful motions briefed and argued were the federal class certification motions and opposition to defendants' motion to dismiss, neither of which ploughed new ground in this circuit nor in this district. Blackie v. Barrack, 524 F.2d 891 (9th Cir.1975); McFarland v. Memorex Corp., 96 F.R.D. 357 (N.D.Cal.1982). Pendent state claim certification was denied without prejudice and the summary judgment motions certain of which had not been responded to were pending at the time of settlement. The motions in the Bankruptcy Court, attacking the reorganization plan, appear to have been uniformly unsuccessful.
[13] One assumes that in cases of this sort, the class representation would not be sought after unless, in the knowledgeable opinion of experienced counsel, the risk of a recovery insufficient to compensate class counsel for their efforts was small.
[14] McFarland v. Memorex, supra n. 12, was in litigation for six years (1979-1985).
[15] As the Weiss firm does not have an office in the Northern District, if it wanted to participate in the case, considerable travel expense, including meals and accommodations (a San Francisco apartment during part of the litigation), was necessary.
[16] In response to the Special Master's request for documentation of accounting and consultant expenses incurred (Fee Application at 54) for which Fee Applicants seek reimbursement, the Gold firm forwarded Declaration of John Torkelson in Support of Joint Petition for Fees and Reimbursement of Expenses, dated October 25, 1985, Declaration of Manfred Seiden in Support of Plaintiffs' Joint Fee Application, dated October 28, 1985, and Affidavit of Services of Irwin B. Shummer, sworn to October 29, 1985.

Mr. Shummer is the managing partner of Buchbinder, Stein, Tunic & Platkin, Certified Public Accountants, New York City, New York, which was retained in May 1983 to render accounting assistance to plaintiffs' counsel. Compensation, not to be paid until the conclusion of the case and subject to court review, was agreed to be at the firm's standard hourly rates of $200 per hour for the managing partner, $150 per hour for another partner, $125 per hour for managers, and $35 per hour for paraprofessionals. 795.25 hours were spent on the engagement for which a fee of $96,758.75 plus $2,382.79 of disbursements, for a total of $99,141.54, is requested.
Manfred Seiden is also a Certified Public Accountant with offices in Larchmont, New York. He was engaged to make a comprehensive review of certain financial statements and documents of MCS with particular reference to the fairness of presentation, accuracy, completeness, and conformity with Generally Accepted Accounting Principles of MCS's financial statements for the year ended December 31, 1979, included in its registration statement. For these services rendered in February, March, and April 1985, Mr. Seiden requests a fee at his standard hourly rate of $200 per hour of $12,200 plus disbursements, for a total of $12,501.
John Torkelson is a qualified Chartered Financial Analyst and Senior Security Analyst and President of Princeton Venture Research, Inc. He was engaged by Fee Applicants as a securities and damages expert to analyze and testify as to issues primarily relating to damages suffered by the class. For 166 hours of time he requests a fee of $32,200 plus $2,998 of disbursements for a total of $35,198.
Ron Bingham who provided Fee Applicants with guidance on certain issues relating to the development and manufacturing of computers was paid $532 cash.
Although, other than Mr. Bingham, no cash outlays have been made, it appears from the material submitted that the Fee Applicants have obligated themselves to make the payments requested, that the services were rendered by competent professionals, and that they were of benefit to the class.
[17] Paralegals.

According to the Declaration of Class Counsel ("Gold Firm Declaration"), the Gold firm seeks reimbursement for 1374.75 paralegal hours. On review, however, it appears that this figure reflects a computational error in that Gold paralegals spent only 1370.75 hours on the case. In addition, in the Gold Firm Declaration and in the Joint Fee Application, paralegal time is valued at an average of $50 per hour for a total value of $68,737.50. However, upon inquiry into the Gold firm's paralegal rates for the time period in question, it was determined that the hourly rates were billed at less than $50 an hour on June 1, 1985. Using these historical hourly rates, the total value for paralegal time is $60,723.75.
Because most of the paralegal time was spent on discovery matters relevant to the case, it is recommended that this time be allowed. Reviewing the remaining time entries, it appears that 36.50 hours were billed for errands, trips to the post office, and distribution of mail. These services could have been accomplished by messengers or clerks.
For this reason, it is recommended that the Gold firm's paralegal time be reduced by 36.50 hours resulting in a total value of $59,062.50 for reimbursement.
In the Weiss firm's Declaration in Support of Plaintiffs' Joint Fee Application ("Weiss Firm Declaration"), reimbursement is sought for 1386.85 paralegal hours. On review, it appears that this figure reflects a computational error that Weiss paralegals spent only 1384.35 hours. In addition, in the Weiss Firm Declaration and in the Joint Fee Application, paralegal time is valued at $50 per hour for a total value of $69,342.50. Upon inquiry into the Weiss firm's paralegal rates for the time period of the case, it was determined that the hourly rates were billed at less than $50. The rates for paralegal hours were billed at $40 in 1982 and gradually increased during the period of litigation to $50 per hour on January 1, 1984. Using these historical hourly rates, the total value for paralegal time is $66,972.50.
Most of the paralegal time was spent on discovery matters pertinent to the case. It is recommended that 1386.85 paralegal hours be allowed for a reimbursement of $66,972.50.
Financial Analysts.
In the "Gold Firm Declaration," the Gold firm seeks reimbursement for 17.25 financial analysts' hours billed at $105 per hour. On review, it appears that this figure reflects a computational error that Gold financial analysts spent only 11.75 hours. It is recommended that the time spent was appropriate and should be allowed for a reimbursement of $1,233.75.
[1] The Court has considered the contingent nature of the litigation in arriving at an enhancement or multiplier of the lodestar (see Report of Special Master), pursuant to the Ninth Circuit ruling in La Duke v. Nelson, 762 F.2d 1318 (9th Cir.1985). But the Supreme Court, noting a split in the circuits on this issue, has ordered reargued the question whether attorneys' fees may be enhanced based on risk of loss. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, ___ U.S. ___, 106 S.Ct. 3088, 3100, 92 L.Ed.2d 439 (1986).